LARSON, Respondent, vs. SUPERIOR AUTO PARTS, INC., and another, Appellants.

*September 14—October 11, 1955.*

614

616

For the appellants there was a brief by *Johnson, Fritschler, Barstow & Witkin* of Superior, and oral argument by *Barney B. Barstow*.

For the respondent there was a brief by *Crawford, Crawford & Cirilli* of Superior, and oral argument by *Raymond A. Crawford*.

BROWN, J.  Appellants submit that the trial court erred in holding that the complaint states a cause of action against each defendant.  Their first contention is that the so-called contract by which the corporation is bound to buy the stock

of a severing shareholder contains no agreement binding that shareholder to sell;—therefore, the contract is void for lack of mutuality. The first paragraph of the 1947 agreement states that when a shareholder severs his connection with the corporation the latter will pay him the value of his interest in the company. It then provides: "After full payment has been made to severing member or to his estate, his stock shall be surrendered to, and revert to the Superior Auto Parts, Inc." We think that is a satisfactory expression of a promise or obligation of a severing shareholder to deliver his stock to the corporation as soon as he has been paid for it. There seems to us to be no lack of mutuality of obligation in the agreement.

Lack of mutuality, however, arises from a source outside the agreement itself. Sec. 183.14, Stats., reads:

"LIENS OF CORPORATION. There shall be no lien in favor of a corporation upon the shares represented by a certificate issued by such corporation and there shall be no restriction upon the transfer of shares so represented by virtue of any by-laws of such corporation, or otherwise, unless the right of the corporation to such lien or the restriction is stated upon the certificate."

It has been suggested that the purpose of the section is to make it certain that stockholders are informed of all restrictions which are binding upon them and actual notice is as effective to bind them as notice printed on the certificate. The legislature did not make such an exception. In construing the section, *Magnetic Mfg. Co. v. Manegold* (1930), 201 Wis. 154, 229 N. W. 544, we did not suggest that the parties' knowledge or the lack of it was material. The supreme court of Minnesota in *Costello v. Farrell* (1951), 234 Minn. 453, 48 N. W. (2d) 557, has determined that a restriction on the sale or transfer of shares of stock imposed by by-laws of the corporation but not stated on the stock certificate is

not binding on a purchaser regardless of whether he is a purchaser for value in good faith without notice of the restriction. We think this complies with the legislative command, especially as in other sections of ch. 183, Stats., where the legislature deemed notice to be material, it said so. Secs. 183.04, 183.08, 183.09, Stats. The omission of a reference to the shareholder's knowledge in sec. 183.14 is significant.

It is also suggested that the present restriction on transfers of stock is not made by a by-law but is made by a purported contract between the corporation and its shareholders, and sec. 183.14, Stats., is not meant to apply to such bilateral matters. We consider, though, that the words "or otherwise" appearing in the statute, described restrictions on transfer created by mutual agreement, as here. We conclude, then, that in spite of Larson's knowledge of the restriction he was not bound by it because it was not indorsed on his stock certificate. The corporation, then, could not have compelled him to surrender his stock when he left its employ. If he is not bound to perform his promise, because sec. 183.14, Stats., has relieved him, there is a lack of mutuality of obligation and the purported contract is void for that reason.

But this does not dispose of the matter. Corporations have the right to acquire their own stock, certain conditions being met. Sec. 180.385, Stats. We said, in *Farmers' M. & S. Co. v. Laun* (1911), 146 Wis. 252, 253, 131 N. W. 366, and repeated in *Rychwalski v. Baranowski* (1931), 205 Wis. 193, 196, 236 N. W. 131:

"It is sometimes necessary and often desirable that a corporation protect itself against the acquisition of shares of its stock by rivals in business or other disturbers, who might purchase shares merely for the purpose of acquiring information which might thereafter be used against the interests of the company. Similar restrictions upon the transfer of shares are generally recognized and held valid where they form part of the charter or articles of organization of the corporation and are matters of contract between the shareholders."

As the corporation may reasonably consider it desirable to keep its shares out of hostile hands its promise to buy a severing shareholder's stock, while unenforceable as an executory contract with that shareholder may, nevertheless, be treated as an offer so to buy, which, when accepted by such a shareholder before the offer is revoked, ripens into a binding contract. We regard the corporation's promise to buy as such a continuing offer. It was never withdrawn by the corporation and was accepted by the respondent when his employment was terminated and he demanded the stipulated price for his stock. Appellants cite *Pessin v. Fox Head Waukesha Corp.* (1939), 230 Wis. 277, 282 N. W. 582; *Strauss v. Eulberg Brewing Co.* (1947), 250 Wis. 579, 27 N. W. (2d) 723, and other decisions of similar import to support their contention that there is no contract because there is no mutuality of obligations. This contention is well answered by *Halvorson v. Tarnow* (1950), 258 Wis. 11, 44 N. W. (2d) 577, in which we discussed the authorities relied on by appellants and adhered to the principle of a continuing offer which, until revoked, might be accepted and a valid contract thereby created.

Appellants urge, further, that the directors who dealt for the corporation in making the agreement (or offer) were personally interested in it and benefited personally by it and no valid contract may result. But the complaint alleges that all the stockholders approved and ratified the agreement.

"The general rule is that a contract or other transaction between a corporation and its directors or other officers is merely voidable at the option of the corporation, and not absolutely void. It follows that in those jurisdictions, where it is so held, the transaction, if within the powers of the corporation, may be consented to, ratified, or acquiesced in by the stockholders, or by the board of directors, if it could be authorized by them. If it is consented to or ratified, with full knowledge of the facts, it is finally and absolutely binding, and neither the corporation nor individual stockholders nor

strangers can afterwards sue to set it aside, or otherwise attack its validity." 3 Fletcher, Cyc. Corp. (perm. ed.), p. 460, sec. 979, quoted in *Davies v. Meisenheimer* (1949), 254 Wis. 419, 427, 37 N. W. (2d) 93.

This disposes of appellants' contention, also, that the agreement is void or voidable as a possible fraud on subsequent stockholders.

Appellants' last contention which we propose to discuss is that the agreement is void for indefiniteness and they invent a variety of situations which they say are not adequately provided for. There is no lack of certainty in it respecting the situation at hand and that, it seems to us, is sufficient for the purposes of this action.

It may well be that facts developed at a trial will throw a different light on some of the propositions advanced by appellants but those are matters of pleading and proof which the demurrer does not reach. We conclude that in so far as appellant corporation is concerned the demurrer was properly overruled.

Respecting appellant Kopito, we reach a different result. Respondent is mistaken in stating that "The contract provided that in the event of the severance of connections with the corporation by any member that the corporation would buy his stock, or in the alternative it would be purchased by the remaining members." Reference to the contract, printed, supra, shows that its terms are that "as another alternative, his stock *may* be purchased by the remaining members." The only *obligation* to buy, if there is one, is on the part of the corporation. The members *may* buy, and this will satisfy any right the respondent has to have his stock taken off his hands, but, as concerns the remaining shareholders, purchase is permissive and optional with them. They do not promise or agree to buy. The contract obliges them only to provide funds to the corporation for the purchase of stock by the corporation, "in the event that the company has not the funds

or ready cash to liquidate member's interest." Since the complaint alleges that the surplus and undivided profits of the corporation are more than sufficient for the purchase of respondent's stock, it is evident that the condition upon which Kopito had agreed to raise money for the corporation's use is not here. Kopito has promised nothing under the facts pleaded, and the complaint states no cause of action against him. His demurrer should have been sustained.

*By the Court.*—Order overruling Kopito's demurrer reversed. Order overruling demurrer of Superior Auto Parts, Inc., sustained. Cause remanded for further proceedings according to law and to this opinion.