SIMENSTAD, Respondent, v. HAGEN and others, Appellants.

*February 5—March 3, 1964.*

654

For the appellants there were briefs by *Faegre & Benson* and *Armin M. Johnson,* all of Minneapolis, Minnesota, and *E. Nelton* of Balsam Lake, and oral argument by *Mr. Nelton* and *Mr. Johnson.*

For the respondent there was a brief by *Doar & Knowles* of New Richmond, and oral argument by *W. P. Knowles.*

A brief *amicus curiae* was filed by *Henry C. Oakey* of Osceola.

DIETERICH, J. The record reveals the following facts. On November 14, 1947, the parties were all directors of the Bank of Osceola, and owned the following number of shares of the bank's stock:

Lien O. Simenstad....................28 shares
Iver M. Hagen......................48 shares
B. J. Zimmerman....................51 shares
Eugene L. Beyl.....................32 shares.

There were 600 shares of capital stock then outstanding, 301 of which were owned by the Segregated Trust of the Bank of Osceola. On the aforementioned date, the parties entered into a written contract which contained the following provisions:

"Whereas, the said parties are purchasing certain other shares of stock of the Bank of Osceola so that when such additional shares are purchased, said Zimmerman, Hagen, and Simenstad will each have an equal number of shares in said bank and said Beyl will have two times the number of shares he now has.

"Now, therefore, it is agreed by and between the parties as follows:

"1. That such additional shares shall be purchased by the parties hereto and apportioned as above set forth. . . .

"2. As, if, and when said shares are acquired by the said parties as above set forth, the said parties hereto agree to and with each other that on all matters regarding the policy of the bank including the election of the board of directors, but excepting matters relating to passing on lease [loans], the parties hereto will vote unanimously so that all the stock of said parties will vote on such questions as determined by the unanimous decision of such persons and when determined by such unanimous decision, the question determined shall be supported by a vote of all the stock of said persons.

"3. The said parties hereto agree to and with each other that if at any time during the life of this agreement any of the said parties desire to sell all or any part of their stock in said bank, said stock shall first be offered to the remaining signers of this agreement and said remaining signers of this agreement shall have the option to purchase said stock at the value of 80 percent of the book value of said stock determined at the end of the preceding current month and said signers of this agreement may have 20 days after notice of the offer of the sale of said stock within which to accept

the offer to purchase said stock and when accepted, said offer shall be closed and payment shall be made for said stock in cash within 10 days thereafter. If said offer is not accepted, then the said stockholder so offering his stock for sale may sell such stock at private sale to any person that he chooses and at such figure as he may choose. . . .

"5. It is understood and agreed by the parties hereto that there shall be firmly attached to all of the stock certificates of each of the parties signing this agreement a rider containing the following language:

" 'The ownership and sale of this stock is subject to the terms and conditions of a certain agreement between B. J. Zimmerman, Iver M. Hagen, Eugene L. Beyl, and L. O. Simenstad, dated November 14, 1947, a copy of which is on file with the cashier of the Bank of Osceola, Osceola, Wisconsin.' "

Other portions of the contract provided that all stock certificates shall contain a rider mentioning the option agreement; that any party breaching the agreement shall become liable to the remaining signers in the sum of $1,000 each, which shall be considered as liquidated damages; and that in case of the death of any of the signers, the executor or administrator shall offer the stock to the remaining signers pursuant to the provisions of Paragraph 3.

The parties acquired additional shares of stock in the bank from the Segregated Trust subsequent to the signing of the agreement, and thereafter their holdings which, taken together, constituted a majority of the outstanding stock—were as follows:

| | |
|---|---|
| Lien O. Simenstad | 110 shares |
| Iver M. Hagen | 110 shares |
| B. J. Zimmerman | 110 shares |
| Eugene L. Beyl | 66 shares. |

The stock certificates held by Hagen, Beyl, and Zimmerman have never contained any reference to the option provisions of the 1947 contract, although Simenstad testified that

he attached a statement of the restriction on his certificates at the time the agreement was entered into. Simenstad made no effort to determine whether the others had attached any such statement to their certificates.

Bernard R. Otto testified that he was employed as assistant cashier at the bank in 1955; that prior to his moving to Osceola he discussed purchasing some of the bank's stock from Zimmerman and Hagen; and he also discussed these plans with Simenstad and Simenstad did not object. On March 8, 1960, a letter was sent to Hagen, Beyl, and Zimmerman by Simenstad's attorney advising them that none of the parties to the 1947 contract had any right to sell their stock to any third person without first offering it to the others. The letter also referred to the contract provision requiring statements of the restriction to be attached to the individual share certificates, and enclosed statements to be used for this purpose. Hagen and Beyl testified that they received the letter and that they were aware of the terms of the contract. B. J. Zimmerman testified that he may have received the letter and that he may have discussed it with his attorney, but that he did not specifically recall these events.

In November, 1961, Hagen, Beyl, and Zimmerman, and another shareholder by the name of Henry C. Oakey, entered into an agreement granting Otto the option to purchase a total of 309 shares of the bank's stock. There were at that time 600 shares outstanding, 391 of which were owned by the parties to the action. The remaining 206 shares were held by about 30 other shareholders in blocks of from one to 35 shares. Eugene Beyl testified that Otto was acquiring the option on behalf of one Erling Larson and that Simenstad did not object to the proposed option until after Erling Larson's name came in. The option to Otto expired without being exercised.

There are three questions raised on the appeal: (1) Whether the option restriction is void because the indi-

vidual certificates contain no reference to it; (2) whether Paragraph 2 of the 1947 agreement is void as against public policy, and, if so, whether the entire agreement must then fail; and (3) whether equitable relief is appropriate in the instant action.

### (1) *Absence of Reference to Restriction on the Certificates.*

The appellants contend that sec. 183.14, Stats., as construed in *Larson v. Superior Auto Parts, Inc.* (1955), 270 Wis. 613, 72 N. W. (2d) 316, governs the issue and renders the restriction unenforceable. Sec. 183.14 reads as follows:

"LIENS OF CORPORATION; RESTRICTIONS ON TRANSFER. There shall be no lien in favor of a corporation upon the shares represented by a certificate issued by such corporation and there shall be no restriction upon the transfer of shares so represented by virtue of any bylaws of such corporation, or otherwise, unless the right of the corporation to such lien or the restriction is stated upon the certificate."

*Larson v. Superior Auto Parts, Inc., supra,* was an action commenced to compel the defendant corporation to purchase the plaintiff's stock pursuant to contract between the corporation and its shareholders to the effect that when any member severs his connection with the company, his stock shall revert to the company, or in the alternative, be purchased by the remaining members. After setting out the provisions of sec. 183.14, Stats., this court stated that the agreement was not enforceable for the reason that the restrictions of the contract were not stated upon the plaintiff's stock certificates.[1]

---

[1] The court went on to hold, however, that the company's promise could be treated as a continuing offer to purchase, which, if accepted by the plaintiff, would ripen into a binding contract. (pp. 619, 620.)

However, neither sec. 183.14, Stats., nor the *Larson Case* has any application to the facts of the instant action. The statute deals with liens in favor of a corporation, and with stock restrictions whereby the option of first purchase is given to the corporation, and *Larson v. Superior Auto Parts, Inc., supra,* involved a contract between a corporation and its shareholders. The contract in the instant action, however, is an agreement only among four shareholders; it is not a contract between the corporation and its members, and sec. 183.14 and the *Larson Case* do not apply to such a situation.

In any event, the appellants' argument misses the point, for the question in the instant action is not whether the restriction clause may be enforced where no riders have been attached to the certificates, but only whether the appellants should be made to comply with the terms of the contract—one of which requires such riders to be affixed to the individual certificates. The trial court determined that they should, and we agree with that determination.

### (2) *Whether the Contract is Void as Against Public Policy.*

Paragraph 2 of the 1947 contract provides in substance that when and if the additional shares are acquired, the parties agree that on all matters regarding bank policy, including the election of directors but excluding matters relating to passing on lease [loans], they will "vote unanimously so that all the stock of said parties will vote on such questions as determined by the unanimous decision of such persons."

It is the appellants' position that Paragraph 2 binds the parties in the performance of their duties as directors of the bank, in that they cannot act without the unanimous consent of all concerned, and they cite several authorities which they claim sustain their contention that agreements which restrict the free exercise of discretion by corporate directors

are invalid.[2] Their argument is that there is no limitation in Paragraph 2, either express or implied, to the effect that the parties are to be bound only as shareholders and not as directors, and they also emphasize that the paragraph applies to "all matters regarding the policy of the bank including the election of the board of directors." The trial court found that Paragraph 2 pertains to the parties only in their capacity as stockholders, and that it does not bind any director or officer of the corporation. We determine that the trial court correctly interpreted Paragraph 2 as applying to the parties only in their capacity as shareholders. The question therefore becomes whether an agreement among majority shareholders to vote their shares unanimously is void as against public policy.

We need not reach this question, however, for no one is seeking to uphold or enforce the provisions of Paragraph 2, and even if the paragraph were held to be invalid, the entire contract would not fail if that paragraph could be severed from the remainder of the agreement. The general rule on severability is stated as follows in Restatement, 2 Contracts, pp. 1119, 1120, sec. 603:

"A bargain that is illegal only because of a promise or a provision for a condition, disregard of which will not defeat the primary purpose of the bargain, can be enforced with the omission of the illegal portion by a party to the bargain who is not guilty of serious moral turpitude unless this result is prohibited by statute. . . ."

In 17 C. J. S., Contracts, p. 1220, sec. 289, the general rule is stated to be that ". . . a lawful promise made for a lawful consideration is not invalid merely because an unlaw-

---

[2] *Timme v. Kopmeier* (1916), 162 Wis. 571, 575, 156 N. W. 961; *Kline v. Little Rapids Pulp Co.* (1932), 206 Wis. 464, 471, 240 N. W. 128; *Koelbel v. Tecktonius* (1938), 228 Wis. 317, 321, 280 N. W. 305; Ballantine, Voting Trusts, Their Abuses and Regulation, 21 Texas Law Review (1942), 139, 142; 1 O'Neal, Close Corporations, pp. 263, 264, sec. 5.16.

ful promise was made at the same time and for the same consideration."

In *Marshall v. Wittig* (1933), 213 Wis. 374, 379, 251 N. W. 439, a case cited by neither party, a corporate stockholder commenced an action to recover on a note signed by the defendant pursuant to an agreement between defendant and the corporation whereby he agreed to purchase a certain amount of stock in the corporation. The trial court gave judgment for the plaintiff. The defendant contended on appeal that because of words in the portion of the note which provided for confession of judgment agreeing "to release the right of appeal," the agreement was contrary to public policy and therefore not enforceable. It was held on appeal that even if serious fault exists because of the use of such words, "they are so circumstanced that they are severable and may be ignored." This court stated that judgment notes are valid legal contracts and that (p. 379):

"In no event can the words complained of have the effect insisted upon of rendering the note void in the absence of fraud or some undue advantage taken of the appellant, for there would still remain a lawful contract with valid and legal covenants to be enforced. In 3 Williston on Contracts, sec. 1779, it is said: 'When some covenants of an indenture are legal and others illegal, the legal covenants may be enforced.' In a contract containing a questionable provision which may be destroyed without defeating the primary purpose of the bargain, and where there is an absence of moral turpitude, a recovery would still be allowed. Restatement of the Law of Contracts, sec. 603; *Zaremba v. International Harvester Co.* 162 Wis. 231, 155 N. W. 114."

In view of our determination that Paragraph 2 may be severed from the remainder of the contract without doing violence to the other terms of the agreement, we need not discuss appellants' contention that said paragraph is against public policy.

### (3)  *Availability of Equitable Relief.*

The appellants' final contention is that injunctive relief is inappropriate in the instant action for two reasons: First, the contract contains a provision for liquidated damages in the event of breach, and therefore the respondent has an adequate remedy at law; and second that respondent failed to show the required irreparable injury.

As to the first point, Paragraph 6 of the contract provides that:

"Any party to this agreement who shall breach the same, shall, upon the establishment of such breach in a competent court of record, be and become liable to the remaining signers in the sum of $1,000 each, which shall be considered as liquidated damages."

Appellants cite 28 Am. Jur., Injunctions, p. 590, sec. 91, for the rule that injunctions will not issue where there is an adequate remedy at law. This court has stated, however, that the remedy of specific performance is not made unavailable by the fact that the contract contains a provision for the payment of liquidated damages in case of breach. *Pennsylvania Oil Co. v. Andrew* (1940), 233 Wis. 226, 232, 288 N. W. 246. See also Restatement, 2 Contracts, p. 700, sec. 378. In *Pennsylvania Oil Co. v. Andrew, supra,* it was inferred from the language of the contract that the parties intended the contract to be fully performed, and that they did not intend the provision for liquidated damages to be a substitute for performance. In the instant action, the trial court similarly found that the parties did not intend that they were to pay $1,000 to each of the other parties in order to obtain the right to sell their stock, and we determine that such a finding by the trial court was not contrary to the inferences raised by the language contained in the agreement.

The complaint did not specifically allege irreparable injury, although it was alleged that the remedy at law was

inadequate by reason of the fact that if defendants were to sell pursuant to the options they granted, control of the majority stock would be vested in persons who are not parties to the contract. The trial court found that the minority shares of the corporation are held by a large group of shareholders and are not widely traded. In seeking an injunction it is not necessary to prove that the plaintiff has suffered irreparable damage, but only that he is likely to suffer such damage. The remedy at law may be inadequate because of the difficulty or impossibility of measuring the damages. *Butterick Publishing Co. v. Rose* (1910), 141 Wis. 533, 124 N. W. 647; *Lakeside Oil Co. v. Slutsky* (1959), 8 Wis. (2d) 157, 168, 98 N. W. (2d) 415. The purpose of an injunction is to prevent damage, not to compensate for it. The appellants agreed not to cause any damage to the respondent, and damage was threatened by the options granted to Otto. Such damage would involve loss of the control of the corporation assured to the parties by the contract, and would be irreparable by its very nature. Therefore, it necessarily follows that respondent was entitled to injunctive relief in the instant action.

*By the Court.*—Judgment affirmed.