STATE, Appellant, v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILROAD COMPANY, Respondent.

*November 2—November 29, 1960.*

· For the appellant the cause was argued by *Beatrice Lampert,* assistant attorney general, with whom on the brief was *John W. Reynolds,* attorney general.

For the respondent there was a brief and oral argument by *Reginald W. Nelson* of Milwaukee.

BROADFOOT, J. Pembine is on the track of the defendant Railroad Company which runs between Sault Ste. Marie,

Michigan, and Minneapolis. At Pembine its tracks cross those of the Chicago, Milwaukee, St. Paul & Pacific Railroad. The two roads share the use of one depot and each road has sidetracks in the Pembine yard. There is a connecting track between the two roads at that point. Train No. 7 of the defendant railroad runs west to Minneapolis and train No. 8 runs east from Minneapolis.

On May 6, 1958, train No. 7 set out a Milwaukee Road baggage car to be picked up later by a Milwaukee Road train. On May 8th, No. 7 also set out a Milwaukee Road baggage car to be picked up later by the Milwaukee Road. On May 9th, train No. 8 picked up a Milwaukee Road baggage car and a Pullman sleeper and made them a part of its train. Each of these operations was at Pembine. On each of the three dates the train crew or road crew of the defendant railroad consisted of one engineer, one fireman, one conductor, and one brakeman. In addition to the so-called train crew or road crew each of the trains carried a baggageman, baggage helper, and a train porter on the sleeping car. Each of the three operations required a breaking of the train to set out the baggage car for the Milwaukee Road and for the placing of the baggage car and Pullman sleeper, after they had been picked up, in proper position in the defendant's train.

The statute alleged to have been violated (sec. 192.25 (4a), Stats. 1957) is as follows:

*"Extension full train crew requirements.* It shall be unlawful for any railroad company in the state of Wisconsin to operate any locomotive, locomotive crane, pile driver, steam shovel, cut widener, gas-electric motor car, or gas-electric switch engine or any other similar self-propelled vehicle propelled by any form of energy whether properly denominated an engine or locomotive, when used on its tracks for the purpose of switching cars, with less than a full train crew consisting of one engineer, one fireman, one conductor,

and two helpers. Said train crew shall be selected from seniority lists of train and locomotive engine employees on the division of the railroad on which the crew is to be worked."

Both sides agreed, and the trial court found, that the statute, being penal in its nature and in derogation of the common law, had to be strictly construed, with questions of doubt to be resolved in favor of the Railroad Company. *State v. Chicago & N. W. R. Co.* 205 Wis. 252, 237 N. W. 132.

In the trial court, as well as here, there was a dispute as to the meaning of the words "switching" and "helper." The state contended, and now contends, that the ordinary or dictionary definitions of each word should be used, while it was and is the position of the Railroad Company that said words have a particular meaning universally understood in railroad parlance. Over the objection of the state, evidence was presented as to the meaning of the words in railroad parlance.

The state contends that the word "helper" is not a technical term and should be given its common and approved usage such as the following dictionary definition: "One who or that which helps, aids, or relieves."

The state further contends that the language should be construed to mean that there must be as members of the train crew two persons qualified to engage in switching operations but that they could be brakemen as that term is synonymous with helper. The state's argument would defeat itself. If a helper is one who could help, aid, or relieve, there is nothing in the record to show that the baggageman, baggage helper, or train porter could not have helped, aided, or relieved in the pickup and setout operations. We agree with the trial court that the word "helper" as used in the statute is a technical one and should be given the meaning ascribed to it by people in the railroad business.

The trial court was correct in ruling that evidence was admissible and required for the proper construction of the words "switching" and "helper." The statute dealt with railroads. The words "engineer," "fireman," and "conductor" have different meanings and resort to railroad parlance would be required to determine the meaning to be given to those words in this particular statute. The trial court made the following as one of its findings:

"7. The term 'helper' is a trade or commercial term, having a well-established meaning universally understood in railroad parlance, and is not applied to any member of a road crew but is used only with respect to switching crews, the members of which are also known as 'yardmen;' the terms 'brakeman' and 'helper' are not synonymous."

In the limited time that we have had to do research on the subject, we discovered cases involving a statute of the state of Arkansas and a city ordinance of the city of Duluth, Minnesota, wherein the term "helper" is used in connection with yard or switching crews. *Beasley v. Boren,* 210 Ark. 608, 197 S. W. (2d) 287, and *Northern Pacific R. Co. v. Weinberg* (D. C. Minn.), 53 Fed. Supp. 133. Further research might well reveal other statutes or judicial decisions showing that the term "helper" refers to members of yard or switching crews.

Both parties to the action contend that resort must be had to the history of the statute in question to determine the legislative intent. The statute was enacted by the 1931 legislature as a substitute amendment to Bill No. 428, A., which read as follows:

"Section 1. A new subsection is added to sec. 192.25 of the statutes to read: (192.25) (4a) It shall be unlawful for any railroad company in the state of Wisconsin to move over its main line outside of yard limits any locomotive crane, pile driver, steam shovel, clam shovel, weed burner, cut widener propelled by any form of energy with less than

a full crew consisting of one engineer, one fireman, one conductor, one brakeman, and a flagman. Said crew shall be selected from seniority lists of employees on the division of the railroad on which the crew is to be worked."

It was added to sec. 192.25, Stats., which is known as the Full Crew Act. At the time, sub. (1) thereof prescribed the crew requirements on passenger trains and sub. (2) the crew requirements on freight trains. As introduced it would appear that the purpose of the original bill was to prescribe the crew requirements on work trains. The language was fairly specific and understandable. The substitute amendment which was enacted added the words "locomotive" and "gas-electric switch engine or any other similar self-propelled vehicle" and also introduced the word "switching." The words "brakeman" and "flagman" were eliminated and the word "helpers" was substituted. The legislature meant to distinguish them. The amendment obscured rather than clarified the purpose of the enactment and it is difficult therefrom to determine the legislative intent.

The finding by the trial court that the term "helper" refers to a member of a switching crew is well supported by the record and must be sustained. The trial court held that sec. 192.25 (4a), Stats., is limited to switching operations by train crews of which helpers are members. This interpretation will not, as contended by the state, limit its application to yard operations. We can conceive of several other situations in which it might be applicable.

The trial court did not pass directly upon whether or not setouts and pickups such as were made by the defendant railroad constituted switching. If it were necessary to sustain the judgment of the trial court, we would not hold that such operations constituted switching within the meaning of this particular statute.

*By the Court.*—Judgment affirmed.