Robert PRILL, Plaintiff-Respondent,

Janet PRILL, Plaintiff-Respondent-Cross Appellant,†

Douglas PRILL, and Matthew Prill, by their Guardian ad Litem, Robert O. Weisel, Plaintiffs-Respondents,

v.

David James HAMPTON, Al Johnson Trucking, Inc., and Commerce & Industry Insurance Company, Defendants-Third Party Plaintiffs-Appellants-Cross Respondents,†

THE AMERICAN INSURANCE COMPANY, and State Farm Mutual Automobile Insurance Company, Defendants-Respondents,

Gary K. MILLER, Third Party Defendant.

Court of Appeals

*No. 89-0752. Submitted on briefs November 7, 1989.—Decided February 6, 1990.*

(Also reported in 453 N.W.2d 909.)

† Petition to review denied.

For defendants-third party plaintiffs-appellants-cross respondents there were briefs by *Edward A. Dudek, Thomas J. Arenz* and *Charles H. Bohl* of *Frisch Dudek, Ltd.,* Milwaukee.

For plaintiffs-respondents there was a brief by *Robert O. Weisel* of *Weisel, Thrasher, Doyle & Pelish, Ltd.,* Rice Lake.

For plaintiff-respondent-cross appellant there were briefs by *D.J. Weis* of *Johnson, Weis, Paulson & Priebe, S.C.,* Rhinelander.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.   David Hampton, Al Johnson Trucking, Inc., and Commerce and Industry Insurance Company appeal a judgment rendered in favor of Robert Prill (Prill), Douglas and Matthew Prill, and Janet Prill (Janet), who is a cross-appellant. Hampton alleges that Prill was negligent as a matter of law, that the trial court erred in certain evidentiary rulings and in the instructions and verdict, and that a new trial is required in the interest of justice. We find no merit in appellants' contentions. Janet cross-appeals, claiming that she was

entitled to prove damages relating to the divorce allegedly caused by Prill's injuries. We conclude that such damages are not authorized by law and, therefore, affirm the judgment.

This case involves a motor vehicle accident that occurred on County Trunk P in Barron County. Robert Prill sustained serious injuries when a stalled tractor-trailer (semi) he was repairing was struck by a vehicle driven by Gary Miller.

Hampton was the driver of the semi that stalled due to extremely cold weather. Hampton made his way to the closest town and advised his employer and the sheriff's department of the problem. He then contacted Don's Truck Repair for assistance. Don's dispatched Prill, a diesel mechanic, in a pickup truck to repair the disabled semi.

When Prill arrived, the semi was facing south on a two-lane highway with the driver's side approximately two feet from the center line and the right front tire just off the road. The semi's flashing lights and top clearance lights were operating and reflectors were displayed on the back of the semi. No flares or reflector triangles had been set out to warn approaching traffic. Prill backed in front of the semi and parked his truck three or four feet in front of the semi with the driver's side of his vehicle extending two feet beyond the semi into the roadway. He attached an amber flashing light to his truck's roof and turned on the four-way flashers to warn traffic. Prill's truck also had an extra set of headlights that were used with a snowplow blade, but it is unclear whether all the headlights were turned on.

Prill ran jumper cables from the semi's battery to its refrigeration unit to assure that its lights remained bright. He also hooked up an additional light to assist him in viewing the truck's engine. He discovered that

the gas line was frozen, added de-icer to the fuel tank and then returned to his truck where he and Hampton waited for the de-icer to take effect. Prill stated at trial that when he returned to the semi, Hampton also returned and attempted to start it. Hampton denied attempting to start the semi. In either event, Hampton waited in the pickup truck while Prill continued to work under the semi's hood.

During this time two vehicles safely passed the semi. A third vehicle, driven by Gary Miller, was heading south on County Highway Trunk P when it struck and side-swiped the semi, injuring Prill. Miller testified that he saw no flares or lights on the semi, or lights from any other source around the semi prior to the collision. Miller had been drinking for several hours, and his blood alcohol level was determined to be .228% two hours after the accident.

Prill's theory at trial was that Hampton turned out the semi's lights in attempting to start the vehicle and forgot to turn them on when he went back to Prill's truck. There was, however, conflicting evidence as to whether the semi's lights were on following the accident. While some witnesses who arrived at the scene testified that the lights were on, others testified that they were not.

█

Hampton first contends that Prill was negligent as a matter of law because of his violation of a safety statute, sec. 347.29(1), Stats., which provides that when any semi-trailer is left standing on the traveled portion of the highway during hours of darkness, "the operator of such vehicle shall display the following warning devices . . .." Hampton argues that Prill was an operator obligated to display the required warning devices and that failure to comply with the statute was negligence as a matter of

673

law. The interpretation of a statute is a question of law that we review without deference to the trial court. *R.J. v. Winnebago County,* 146 Wis. 2d 516, 519–20, 431 N.W.2d 708, 709 (Ct. App. 1988).

Hampton argues that the term "operator" means more than the driver and encompasses those in physical possession or control of the vehicle. Hampton argues that Prill is covered by the statute because he assumed the vehicle's control during his repairs. This argument fails for two reasons.

First, Hampton has failed to cite any authority holding that a mechanic repairing a semi is the operator of a vehicle within the meaning of that statute. In the absence of such authority, this is a matter of first impression, and our primary source for construing the statute is the language of the statute itself. *Alberti v. City of Whitewater,* 109 Wis. 2d 592, 598, 327 N.W.2d 150, 153 (Ct. App. 1982).

For the purpose of statutory construction, we accept Hampton's argument that there may be more than one operator of a semi. We also accept Hampton's contention that the term "operator" is broader than "driver" and that an individual other than the driver may be subject to the statute. Even accepting these propositions, we do not agree with Hampton's conclusion that a mechanic working on a stalled semi is its operator. Prill was to repair the semi, and his right of control over the semi was limited to this specific task. For example, Prill could not have made the decision to detach the trailer from the tractor and haul the tractor to the garage while the trailer remained unattended in a remote rural area. We conclude that Prill's limited right of control over the

semi did not render him an operator of the semi within the meaning of sec. 347.29(1), Stats.

A second basis for reaching this conclusion is Hampton's acknowledgment that the common practice of the trucking industry, including his employer, is to place the responsibility for displaying reflective triangles on the truck driver. Section 347.29 requires the "operator" to display warning devices. The industry standards require the driver, not a mechanic, to display warning devices. Because we may resort to industry standards in interpreting a statute, *see State v. Minneapolis, S.P.& S.S.M. R.R. Co.*, 12 Wis. 2d 21, 25-26, 106 N.W.2d 320, 322-23 (1960), we conclude that the legislature's use of the term "operator" was not meant to include a mechanic repairing a vehicle.

We conclude that Prill was not subject to statutory warning display requirements because he was not the "operator" of the vehicle as that term is used in the statute. This conclusion, however, does not prevent the jury from assessing negligence for Prill's failure to display the necessary warning devices if, under the facts of a specific case, the jury believes such failure was negligence. A mechanic's failure to display warning devices while working on a disabled vehicle is to be measured under the standard of ordinary care, not as negligence per se based upon violation of a safety statute.

Hampton argues that Prill was negligent as a matter of law under the ordinary definition of negligence. Determining negligence is a jury function. A court cannot usurp this function unless no reasonable jury could find that an actor failed to exercise ordinary care. *LePoidevin by Dye v. Wilson*, 111 Wis. 2d 116, 124, 330 N.W.2d 555, 559 (1983). Because the jury found that Prill was not

negligent, we review Hampton's assertion by searching the record for any credible evidence that would justify the jury's finding. *Fehring v. Republic Ins. Co.,* 118 Wis. 2d 299, 305-06, 347 N.W.2d 595, 598 (1984).

Prill admits he knew that no flares or triangles had been displayed. A variety of other lights warning approaching motorists of the stalled semi were in use at the time Prill started working on the engine. Given this evidence, it was possible for the jury to find that Prill's use of the lights available to him was reasonable and did not constitute negligence.

Hampton also argues that the court erred by finding that sec. 347.29(1), Stats., applied to him and not Prill. Hampton argues that subsec. (11) of sec. 347.26, Stats., removes Hampton's obligation to display warning devices by placing the duty on Prill, as the driver of a vehicle equipped with optional lighting equipment.[1]

---

[1]Section 347.29(1) provides in relevant part:

> Except as provided in s. 347.26(11)(b), whenever any motor truck, motor bus, trailer or semitrailer more than 80 inches in width or truck tractor or road tractor is left standing, whether attended or unattended, during hours of darkness upon the traveled portion of any highway or the shoulder adjacent thereto outside the corporate limits of a city or village, the operator of such vehicle shall display the following warning devices upon the highway during the entire time the vehicle is so left standing . . ..

Section 347.26(11) provides:

> **Flashing warning lamps.** (a) Any vehicle may be equipped with lamps which may be used for the purpose of warning the operators of other vehicles of the presence of a vehicular traffic hazard requiring the exercise of unusual care in approaching, overtaking or passing, and when so equipped may display such warning in addition to any other warning signals required by this section. The lamps used to display such warning to the front shall be mounted at the same level and as widely spaced laterally as practicable, and shall display simultaneously flashing white or amber lights, or any shade of color between white and amber. The lamps used to display such warning to

676

For the provisions of sec. 347.29, Stats., to apply to Prill, Prill's truck must meet the definition of a specially equipped vehicle described in sec. 347.26(11)(a). While Hampton argued to the trial court that Prill was obligated to display the warning devices prescribed by sec. 347.29, he never argued, as he apparently does now, that the truck's standard hazard lights met the criteria of sec. 347.26(11)(a).

■

At the trial, Hampton appeared to argue that Prill's oscillating yellow light invoked the provisions of sec. 347.26(11)(a). Now Prill suggests that standard hazard lights invoke these statutory provisions. Not only did Hampton fail to advance such a theory at trial, his requested jury instructions are inconsistent with such a theory. Hampton asked the court to submit to the jury the inquiry as to the application of the statutory provision of sec. 347.26(11)(a). If Hampton was arguing that the hazard lights makes the truck a specially equipped vehicle under sec. 347.26(11)(a), the application of the statute should have been determined as a matter of law because there was no factual dispute that the truck was equipped with hazard lights that were operating at the time of the accident. We will not review issues raised for

---

the rear shall be mounted at the same level and as widely spaced laterally as practicable, and shall show simultaneously flashing amber or red lights, or any shade of color between amber and red. These warning lights shall be visible from a distance of not less than 500 feet under normal atmospheric conditions at night. Directional signals meeting the requirements of this chapter shall be used or lamps meeting these requirements, mounted so as to comply with turn signal installation.

(b) Whenever any vehicle other than an automobile, which is equipped as permitted in par. (a), is stopped for more than 10 minutes on the traveled portion of any highway, or shoulder thereof, during hours of darkness, the driver of such vehicle shall display warning signals as required by s. 347.29.

the first time on appeal. The issue is deemed waived since the trial court never had the opportunity to consider the application of the statutes now being advanced. *Wirth v. Ehly,* 93 Wis. 2d 433, 443-44, 287 N.W.2d 140, 145-46 (1980).

Hampton next complains that the trial court erred by refusing to admit into evidence photographs and a videotape made by Hampton's reconstruction expert, while at the same time admitting Prill's posed photographs showing reflector triangles set up at an accident scene. Evidentiary rulings are submitted to the trial court's sound discretion and will not be reversed upon review unless the court has abused its discretion. *State v. Wyss,* 124 Wis. 2d 681, 707, 370 N.W.2d 745, 757 (1985).

The trial court refused to admit the photographs and videotape submitted by Hampton because it concluded that the proffered exhibits did not accurately reflect the accident scene. These exhibits were submitted as an authentic re-creation, including the semi's position, the lighting, and other relevant circumstances as they existed at the time of the accident. The court found that the evidence at trial showed that the videotape did not accurately reflect the semi's location and displayed the scene from the opposing lane of traffic, rather than from the lane of an approaching vehicle. The evidence supports these findings and provides a sufficient basis to reject the proffered exhibits.

Prill, on the other hand, attempted to introduce photographs of reflector triangles to show their proper use, not to depict the accident scene. Because the jury was properly cautioned on the limited purpose of the

exhibit, the trial court did not abuse its discretion by admitting these photographs.

Hampton also complains that the court erred in the instructions and verdict submitted to the jury. A trial court has broad discretion when instructing the jury and prejudicial error should not be found unless the instructions probably misled the jury. *McKnight v. General Motors Corp.*, 143 Wis. 2d 67, 69-70, 420 N.W.2d 370, 371 (Ct. App. 1987).

First, Hampton argues that the court erred by failing to instruct the jury on Prill's duty to place flares in accordance with the requirements of sec. 347.29(1), Stats. We have previously addressed Prill's duties and find no error in the court's failure to so instruct the jury.

Hampton next contends that the court erred by submitting civil jury instructions relating to stopping the vehicle both off and on the roadway. Hampton argues that these requirements do not apply when a vehicle becomes disabled on the highway and, because the semi was disabled as a matter of law, the instruction should not have been submitted to the jury.

The evidence showed that when Hampton began experiencing difficulty he could have driven the semi several hundred feet further than where he left it in order to conform with any requirements of law or reasonable safety standards. This evidence raised a question of fact as to Hampton's positioning of the semi on the roadway and warranted the instructions given by the court.

Hampton also objects to the court's giving Wis JI—Civil 1051 (1989), relating to the duty of a workman preoccupied by his work. The substance of this instruction is that when work provides a momentary diversion,

679

the degree of care to be exercised by a workman may be reduced. The issue of Prill's failure to detect Miller's vehicle approaching the semi, to detect whether the semi's lights had been inadvertently turned out by Hampton, or to take other steps for his own safety were all relevant considerations for the jury. Wisconsin JI—Civil 1051 related to each of these issues and was properly submitted to the jury.

■■■

Finally, Hampton challenges the judgment by asserting that a new trial is required in the interest of justice. Whether a new trial is appropriate is a matter of discretion. *Chicago & N.W. R.R. v. LIRC,* 91 Wis. 2d 462, 474, 283 N.W.2d 603, 610 (Ct. App. 1979). Because we conclude that this matter was fully and fairly tried, we find no basis for ordering a new trial.

Janet Prill, Robert's wife at the time of these injuries but since divorced, has filed a cross-appeal alleging the trial court erred by excluding evidence that the divorce was the result of the injuries sustained by Robert. She argues that she is entitled to damages for loss of consortium and wrongful divorce.

■■■

Janet first claims that she is entitled to loss of consortium damages not only during the marriage but also after the time of divorce. Existing Wisconsin law makes loss of consortium claims applicable only to marital relationships. *See Peeples v. Sargent,* 77 Wis. 2d 612, 642, 253 N.W.2d 459, 471 (1977). *Denil v. Integrity Mut. Ins. Co.,* 135 Wis. 2d 373, 401 N.W.2d 13 (Ct. App. 1986), clearly provides that public policy reasons make loss of consortium damages available only to individuals married at the time of injury. The same public policy considerations, including uncertainty of claims and unmanage-

680

able societal costs, require that damages for consortium be terminated when the marital relationship terminates.

Janet next contends that she should be permitted to prove that Robert's injuries caused the divorce and that she is entitled to damages for "wrongful divorce." This type of claim has not been recognized in the past and we refuse to recognize it now. We conclude that sound public policy reasons preclude claims that a spouse's injuries caused a divorce. While we recognize that there is a strong public policy that permits injured parties to recover damages for their injuries, we also recognize countervailing public policy considerations that should bar claims for wrongful divorce.

Failure of a marriage is rarely attributable to a single cause. In some instances, there may be evidence that the spouse's injuries were, in part, the cause of the marriage's failure. For the jury to properly assess the amount of damages, however, it is necessary to show both a causal relationship and the extent or degree this factor played in the failure of the marriage. Such an inquiry would open to scrutiny very personal issues, not only of the spouse claiming damages, but also of the injured spouse. This factor, along with the difficulty of the jury in determining the extent to which any single cause may have contributed to the failure of the marriage, requires that such claims be rejected.

A second basis for rejecting Janet's claim is Hampton's contention that this is essentially an alienation of affections claim. If so, Janet's claim would clearly be barred by sec. 768.01, Stats., which abolishes all alienation of affection claims. The same public policy reasons

supporting the legislature's abolition of these claims also support denial of Janet's claim for wrongful divorce.

*By the Court.*—Judgment affirmed.