Robert J. BAIERL, d/b/a Supreme Builders, Plaintiff-
Appellant,

v.

John McTAGGART and Susan McTaggart, Defendants-
Respondents.†

Court of Appeals

No. 98–3329. Submitted on briefs February 1, 2000.—Decided
August 8, 2000.

2000 WI App 193

(Also reported in 618 N.W.2d 754.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Thomas L. Frenn* and *Roy H. Nelson* of *Petrie & Stocking, S.C.*, of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Barry R. White* of *Weiss, Berzowski, Brady & Donahue, LLP*, of Milwaukee.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

¶ 1.   CURLEY, J. Robert J. Baierl, d/b/a Supreme Builders (Baierl), appeals from a judgment requiring Baierl to pay $4,484.94 to John and Susan McTaggart (McTaggarts). In this landlord-tenant dispute, the trial court granted summary judgment to the McTaggarts, the tenants, and after finding that the lease was void, ordered Baierl, the landlord, to pay twice the security deposit less some expenses to the McTaggarts. Baierl argues that the trial court erred in ruling that: (1) an

addendum to Baierl's lease, which contained a prohibited clause under the Wisconsin Administrative Code, voided the entire lease; and (2) without a lease provision, Baierl unlawfully withheld the McTaggarts' security deposit. Baierl submits that, per the holding in *Simenstad v. Hagen*, 22 Wis. 2d 653, 126 N.W.2d 529 (1964), the trial court should have severed the prohibited clause from the lease as it was a non-essential clause which could be severed without defeating the primary purpose of the parties' agreement. Baierl argues that, after the trial court severed the offending lease provisions, it should have applied the security deposit to those items authorized by the remaining lease provisions. We agree and reverse.

## I. BACKGROUND.

¶ 2.   On July 12, 1996, the McTaggarts signed a lease for an apartment owned by Baierl located in Oconomowoc, Wisconsin. The lease was to run from August 1, 1996, to July 31, 1997. The lease was lengthy, consisting of a two-page single-spaced standard residential lease plus several addenda. One of the terms of the lease required the McTaggarts to pay a security deposit of $1,790. In the longer addendum, the following language appeared at paragraph seventeen:

> In the event that Supreme Builders shall be obliged to commence legal action in order to enforce the terms and conditions of any portion of this lease and amendment, the tenant shall be liable to Supreme Builders for all Supreme Builders' costs, disbursements and expenses incurred including, without limitation, reasonable attorney fees incurred.

Pursuant to the lease, the McTaggarts moved into the apartment. However, in a letter dated November 29,

1996, the McTaggarts wrote to Baierl advising that "we will be terminating our rental agreement as of February 1, 1997."[1] After receiving the letter, Baierl made an attempt to re-rent the apartment. When this task proved unsuccessful, Baierl then withheld the security deposit for unpaid rent and sued the McTaggarts to enforce the terms of the lease. Despite the wording found in paragraph seventeen, Baierl never sought reimbursement for all his "reasonably incurred" attorney fees. Instead, the complaint only sought the limited

[1] Although the original letter terminating the lease stated no reason for the termination, in the McTaggarts' counterclaim they contended that Baierl "negligently misrepresented" that the apartment was quiet. Approximately eighteen months after the letter was sent to Baierl, John McTaggart submitted an affidavit to the trial court alleging that the move was due to train noise. However, the McTaggarts did not pursue their claim that Baierl "negligently misrepresented" that the apartment was quiet.

attorney fees authorized in WIS. STAT. § 799.25(10)[2] and WIS. STAT. § 814.04(1).[3]

¶ 3. The McTaggarts answered the complaint and counterclaimed seeking to rescind the lease. Later, they filed an amended answer in which they alleged that the entire lease was void because paragraph sev-

---

[2] WISCONSIN STAT. § 799.25(10) provides:

(10) ATTORNEY FEES. (a) Attorney fees as provided in s. 814.04 (1) and (6), except if the amount of attorney fees is otherwise specified by statute.

(b) In an action of replevin and attachment the value of the property recovered shall govern the amount of the attorney fees taxable. In an action of eviction the attorney fees taxable shall be $10 plus such sum as is taxable under par. (a) on account of the recovery of damages.

(c) If judgment is for the defendant, the amount claimed in the complaint, the value of the property sought to be recovered or the amount recovered on the defendant's counterclaim, in the court's discretion, shall govern the amount of the attorney fees that the defendant shall recover, and the defendant is not entitled to recover for cost items the defendant has not advanced.

(d) No attorney fees may be taxed in behalf of any party unless the party appears by an attorney other than himself or herself.

All references to the Wisconsin Statutes are to the 1995–96 version unless otherwise noted.

[3] WISCONSIN STAT. § 814.04(1) provides:

(1) ATTORNEY FEES. (a) When the amount recovered or the value of the property involved is $1,000 or over, attorney fees shall be $100; when it is less than $1,000 and is $500 or over, $50; when it is less than $500 and is $200 or over, $25; and when it is less than $200, $15.

(b) When no money judgment is demanded and no specific property is involved, or where it is not practical to ascertain the money value of the rights involved, attorney fees under par. (a) shall be fixed by the court, but shall not be less than $15 nor more than $100.

(c) No attorney fees may be taxed on behalf of any party unless the party appears by an attorney other than himself or herself.

enteen, found in the addendum, allowing Baierl to be reimbursed for all his reasonable attorney fees, was prohibited by an Agriculture, Trade and Consumer Protection provision of the Administrative Code, WIS. ADMIN. CODE § ATCP 134.08(3). The McTaggarts brought a summary judgment motion claiming that the lease was void and, as a result, Baierl could not lawfully retain their security deposit and they sought double damages pursuant to WIS. STAT. § 100.20.

¶ 4.   The trial court, while noting that the remedy suggested by the McTaggarts was drastic, adopted the McTaggarts' reasoning and granted the summary judgment motion. In doing so, the trial court found that because the clause in Baierl's addendum was prohibited, the entire lease was void. The trial court then concluded that, without a lease, Baierl unlawfully withheld the McTaggarts' security deposit and the trial court ordered Baierl to pay double damages to the McTaggarts, plus the McTaggarts' almost $3,000 in legal fees.

## II.   ANALYSIS.

¶ 5.   When the trial court granted the McTaggarts' summary judgment motion, it stated that "there is no clear statute on the subject, and there is no case law that is precisely on point." Baierl argues that the trial court erred because *Simenstad v. Hagen* clearly permits the severing of a prohibited clause from a contract and the enforcement of the remaining contract provisions.[4] Baierl states that *Simenstad*'s only restriction is that the removal of the offending clause

[4] In response to the dissent's assertion that Baierl "never argued that the provision was severable," we note that, for most of the summary judgment hearing, Baierl's counsel persistently contended that paragraph 17 was not illegal because it was

must not defeat the primary purpose of the contract. Baierl contends that paragraph seventeen could easily have been severed from the lease provisions without destroying the primary purpose of the lease. Further, he asserts that equity clearly favors the enforcement of the other lease provisions as it was the McTaggarts who intentionally breached their duty by moving before the end of the lease period. Baierl also submits that it was unfair and harsh to require him to pay the McTaggarts' double damages on the security deposit and to pay their almost $3,000 in attorney fees generated by this litigation, when their breach of the lease

---

consistent with the second sentence of WIS. ADMIN. CODE § ATCP 134.08(3) which reads:

No rental agreement may

. . .

(3) require payment, by the tenant, of attorney's fees or costs incurred by the landlord in any legal action or dispute arising under the rental agreement. *This does not prevent the recovery of costs or attorney's fees by a landlord or tenant pursuant to a court order under ch. 799 or 814, Stats.*

Near the end of the hearing, however, when the trial court inquired about the possibility of severing the prohibited provision from the remainder of the lease, Baierl's attorney embraced the trial court's idea and suggested that the trial court consider enforcing the lease and find the prohibited clause "unenforceable." Thus, we are satisfied that Baierl adopted the trial court's argument which is presented here. Moreover, the waiver rule is predicated on the fact that the appellate court should not assume the trial court's role. *See Prill v. Hampton*, 154 Wis. 2d 667, 678, 453 N.W.2d 909 (Ct. App. 1990) ("The issue is deemed waived since the trial court never had the opportunity to consider" the parties' arguments) (citing *Wirth v. Ehly*, 93 Wis. 2d 433, 443–44, 287 N.W.2d 140 (1980)). Here, the trial court did rule on the issue notwithstanding the fact that the trial court originally raised it.

resulted in a significant monetary loss for Baierl consisting of several months' rent plus additional expenses. We agree with all three of Baierl's arguments.

¶ 6. When reviewing a trial court's grant or denial of summary judgment *de novo*, we use the methodology set out in WIS. STAT. § 802.08(2). *See Strassman v. Muranyi*, 225 Wis. 2d 784, 787, 594 N.W.2d 398 (Ct. App. 1999). We need not repeat that methodology here, except to note that summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See id.* at 787–88.

¶ 7. Although decided on different facts, *Simenstad* dealt with a shareholder agreement, the holding of the case authorized the severance of illegal provisions in the contract. *See id.* at 661. The case noted that the general rule on severability is that,

> "A bargain that is illegal only because of a promise or a provision for a condition, disregard of which will not defeat the primary purpose of the bargain, can be enforced with the omission of the illegal portion by a party to the bargain who is not guilty of serious moral turpitude unless this result is prohibited by statute."

*Id.* at 661 (citation omitted). Further, the *Simenstad* court observed that: "[I]f the paragraph [in the shareholder agreement] were held to be invalid, the entire contract would not fail if that paragraph could be severed from the remainder of the agreement." *Id.*

¶ 8. In affirming the vitality of the rule severing offending clauses and enforcing the remaining con-

tract, the *Simenstad* court relied on the holding found in *Marshall v. Wittig*, 213 Wis. 374, 251 N.W. 439 (1933):

> The defendant contended on appeal that because of words in the portion of the note which provided for confession of judgment agreeing "to release the right of appeal," the agreement was contrary to public policy and therefore not enforceable. It was held on appeal that even if serious fault exists because of the use of such words, "they are so circumstanced that they are severable and may be ignored."

*Simenstad*, 22 Wis. 2d at 662 (quoting *Marshall*). In *Marshall*, the court directed that:

> In no event can the words complained of have the effect insisted upon of rendering the note void in the absence of fraud or some undue advantage taken of the appellant, for there would still remain a lawful contract with valid and legal covenants to be enforced. In 3 Williston on Contracts, § 1779, it is said: "When some covenants of an indenture are legal and others illegal, the legal covenants may be enforced." In a contract containing a questionable provision which may be destroyed without defeating the primary purpose of the bargain, and where there is an absence of moral turpitude, a recovery would still be allowed.

*Marshall*, 213 Wis. at 379 (citation omitted) (quoted in *Simenstad*, 22 Wis. 2d at 662).

¶ 9. Although no Wisconsin case has applied the doctrine of severability to a landlord-tenant case, another jurisdiction has. In *Campi v. Seven Haven Realty*, 682 A.2d 281 (N.J. Super. L. 1996), the court construed a lease provision as being unenforceable that required the tenant to pay rent even though the tenant

never took possession of the property and withdrew her application to rent the apartment. The court did, however, enforce another provision that required the tenant to pay the application fee.

¶ 10. Under the circumstances present here, applying the severability doctrine to the McTaggarts' lease is a reasonable extension of *Simenstad*. First, Baierl never attempted to enforce the illegal provision, despite its existence in the addendum; he only requested the limited attorney fees authorized in Chapters 799 and 814. Thus, it does not appear from the record that Baierl engaged in any "serious moral turpitude" which would prevent severance. As noted, while paragraph seventeen is prohibited, the lease is voluminous, consisting of a standard residential lease and three addenda, and the prohibited clause found in paragraph seventeen was tucked into an addendum, not the standard residential lease. Second, no statute forbids the severance of the clause from the lease. Third, severing paragraph seventeen from the remainder of the lease documents does not defeat the primary purpose of the lease. The primary purpose of the lease was to spell out the rights and duties between the landlord and tenant for the renting of the apartment. This primary purpose can easily be met by severing the offending clause and enforcing the remaining lease provisions.

¶ 11. Our review of the record also supports a finding that equity favors Baierl in this lawsuit. The McTaggarts entered into a lease for one year and then breached it several months later. It was disclosed at the hearing that the McTaggarts were building a new home in Ohio and, shortly after the home was completed, the McTaggarts gave Baierl notice of the termination. The McTaggarts originally gave no reason

for terminating the lease, and the reason proposed after litigation began was that, at the time of the signing of the lease, they were unaware that train tracks were located some distance from the apartment. Their tardy contention that train noise forced them to move appears disingenuous. Had the McTaggarts' breach of the lease been motivated by the train noise, one would have expected them to have communicated that fact to Baierl at the time of the breach, rather than after litigation began. Regardless of the reason, it was the McTaggarts who breached the lease. Equity and public policy favor parties who uphold their contractual obligations.[5]

¶ 12. Additionally, an unusual set of circumstances exists with regard to the security deposit. Baierl argues that the trial court erred when it found that, absent a valid lease, he unlawfully withheld the McTaggarts' security deposit. Originally, by way of the lease, the McTaggarts had authorized Baierl to withhold the security deposit for rent. Baierl's withholding the security deposit only became unlawful later, when the trial court determined that the lease which permit-

---

[5] The dissent questions whether the majority opinion will undermine the consumer protection law. The majority is also committed to the protection of consumers, but this concern does not equate to the customer/tenant winning when equity and the reasonable application of the law dictates otherwise. Further, the hypothetical raised in the dissent is inappropriate to the facts as Baierl has never requested payment of his reasonable attorney fees either before or after the litigation was commenced. Finally, the dissent worries that non-enforcement will "penal[ize] the very people who most need its protections—those too unsophisticated or poor to hire a lawyer." However, here the record clearly indicates that the McTaggarts were neither unsophisticated nor poor.

ted the security deposit to be used in this fashion was void. Thus, at the time Baierl enforced the lease provision, applying the security deposit against rent owed was permissible. Consequently, Baierl properly applied the security deposit towards the McTaggarts' outstanding rent. Given our determination that the remaining lease provisions are valid and allow for the application of the security deposit towards unpaid rent and other expenses, the McTaggarts are not entitled to any damages under WIS. STAT. § 100.20.

¶ 13. We also conclude that the remedy fashioned by the trial court was unduly harsh and unjust. Not only were the McTaggarts relieved of the duty to pay rent for the lease term, but they were paid double their security deposit and reimbursed all of their attorney fees. The McTaggarts have obtained a windfall for what was, undisputedly, their breach of the lease. Conversely, Baierl was not compensated for the many months that the apartment went vacant, nor did he recover any of his expenses in cleaning the apartment and in attempting to re-rent it. He also was denied reimbursement for his statutorily-authorized attorney fees. Moreover, he was ordered to pay twice the amount deposited by the McTaggarts and their attorney fees in defending against their breach of the lease. No reasonable argument can be made that this outcome was fair.

¶ 14. For all of the reasons stated, the summary judgment is reversed and the matter remanded to the trial court for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded with directions.

¶ 15. SCHUDSON, J. *(dissenting)*. The issue in this appeal is whether the trial court was correct in voiding a lease because Addendum A, paragraph seventeen, of the lease provided:

> In the event that Supreme Builders shall be obliged to commence legal action in order to enforce the terms and conditions of any portion of this lease and amendment, the tenant shall be liable to Supreme Builders for all Supreme Builders' costs, disbursements and expenses incurred including, without limitation, reasonable attorney fees incurred.

I conclude that the trial court was correct. I further conclude that the majority has inappropriately engaged in fact-finding and, in order to support its decision, has drawn an inference wholly unsupported by the record. Finally, I conclude that the majority's decision undermines the consumer protection that the legislature intended in enacting WIS. STAT. § 100.20.

¶ 16. WISCONSIN ADMIN. CODE ch. ATCP 134 was adopted pursuant to WIS. STAT. § 100.20. *See* WIS. ADMIN. CODE § ATCP 134.01. WISCONSIN ADMIN. CODE § ATCP 134.08 (1990) provides, in relevant part:

> No rental agreement may:
>
> . . . .
>
> **(3)** Require payment, by the tenant, of attorney's fees or costs incurred by the landlord in any legal action or dispute arising under the rental agreement. This does not prevent the recovery of costs or attorney's fees by a landlord or tenant pursuant to a court order under ch. 799 or 814, Stats.

*On appeal*, Supreme Builders concedes that Addendum A, paragraph seventeen, of its lease violates § ATCP 134.08(3). *In the trial court*, however, Supreme Builders never conceded that paragraph seventeen violated

567

the administrative rule, *and never argued that the provision was severable.* Instead, Supreme Builders repeatedly argued that paragraph seventeen merely provided for "the recovery of costs or attorney's fees" under the second sentence of § ATCP 134.08(3).

¶ 17. The trial court, not Supreme Builders, first raised the possibility that the lease could be saved by severing paragraph seventeen. Even when the trial court all but invited Supreme Builders to argue severability, Supreme Builders still failed to do so and, instead, remained true to its contention that paragraph seventeen was legal. Nevertheless, the trial court considered severability, commenting: "I'm looking for a way to read [paragraph seventeen] so it can be severed from the rest of the contract and simply [be] deemed unenforceable to avoid the drastic results [of voiding the lease]."

¶ 18. The trial court rejected Supreme Builder's argument that paragraph seventeen was legal, *and Supreme Builders does not renew that argument on appeal.* The trial court also concluded that the lease could not be saved by severing the illegal paragraph because the "trend and philosophy [of the case law] is that the inclusion . . . of contract provisions which are directly prohibited by Consumer Protection Statutes results in the voiding of the entire contract."

¶ 19. More than two months later, Supreme Builders moved the trial court for reconsideration *but still did not argue or even raise severability.* Now, on appeal, Supreme Builders implicitly concedes, for the first time, that paragraph seventeen is illegal and argues, for the first time, that it should be severed to save the lease. Thus, the record does not support the majority's assertion that Supreme Builders "suggested that the trial court consider enforcing the lease and

find the prohibited clause 'unenforceable.' " Majority at ¶ 5 n.4. *See State v. Anderson*, 215 Wis. 2d 673, 683, 573 N.W.2d 872 (Ct. App. 1997) (appellate court not required to consider arguments raised for first time on appeal). *But see State v. Weber*, 164 Wis. 2d 788, 791, 476 N.W.2d 867 (1991) ("Once an issue is raised in a petition for review, any argument addressing the issue may be asserted in the brief of either party or utilized by this court.").

¶ 20.   Assuming we should reach the merits of the argument Supreme Builders raises for the first time on appeal, I conclude that the trial court was correct.

¶ 21.   To reach its result, the majority inappropriately engages in fact-finding. *See State v. Hydrite Chem. Co.*, 220 Wis. 2d 51, 79, 582 N.W.2d 411 (Ct. App.) (court of appeals is "a reviewing court, not a fact-finding court"), *review denied*, 220 Wis. 2d 364, 585 N.W.2d 156 (1998); *see also Wurtz v. Fleischman*, 97 Wis. 2d 100, 107 n.3, 293 N.W.2d 155 (1980) (clarifying that Wis. Const. art. VII, § 5(3) "precludes [court of appeals] from making any factual determinations where the evidence is in dispute"). The majority states: "[T]he lease is voluminous, consisting of a standard residential lease and three addenda, and the prohibited clause found in paragraph seventeen was tucked into an addendum, *not the standard residential lease*." Majority at ¶ 10 (emphasis added). Thus, the majority infers that it was not Supreme Builder's standard practice to execute leases with the offending language, and concludes that Supreme Builders did not engage in "any 'serious moral turpitude' which would prevent severance." *See id.*

¶ 22.   The record provides no basis for the majority's factual finding or inference. Addendum A, the first of three addenda, all of which were dated and signed

together with the lease, contains not only paragraph seventeen but numerous other provisions including one stating, "Tenant acknowledges that this addendum constitutes a part of the agreement with Supreme Builders and is considered as a part of the lease to which it is attached." Most significantly, the addendum is titled "*ADDENDUM A* SUPREME BUILDERS ADDITIONAL CONDITIONS TO THE LEASE FOR _____ AT _____."[1] *See* Appendix. Thus, the addendum does not appear to be one designed solely for the tenants in this case. Accordingly, the record casts considerable doubt on the majority's speculation that it was not Supreme Builder's standard practice to execute leases with the offending language.

¶ 23.   Severing paragraph seventeen in order to save Supreme Builders' lease undermines the consumer protection provided by WIS. ADMIN. CODE ch. ATCP 134. As the McTaggarts argue:

> [I]f the Court concludes that the illegal provision does not render the lease void, the Court will have nullified Wis. Admin. Code § ATCP 134.08(3). Once this Court determines that landlords will never suffer any repercussions from including an illegal attorney's fees provision in their leases (other than the provision not being enforced), many landlords will intentionally include [an] illegal attorney's fees provision in their leases. Occasionally some tenants would be willing [to] pay the landlord's attorney's fees; others who knew the law would not. However, the result [Supreme Builders] urges would encourage landlords to violate Wis. Admin. Code § ATCP ch. 134 by allowing them to occasionally

---

[1] The second addendum is titled "*ADDENDUM B*." The third addendum is titled "ADDENDUM C–2 SUPREME BUILDERS PET AGREEMENT."

collect their attorney's fees without fear of ever suffering any consequence. This result turns Wis. Admin. Code § ATCP ch. 134 on its head by penalizing the very people who most need its protections: those too unsophisticated or poor to hire a lawyer who knows that an attorney's fees provision violates Wis. Admin. Code § ATCP 134.08(3).

The McTaggarts are correct.

¶ 24. In *Shands v. Castrovinci*, 115 Wis. 2d 352, 340 N.W.2d 506 (1983), the supreme court, deciding whether WIS. STAT. § 100.20(5) required an award of reasonable attorney fees for an appeal in an action resulting from a violation of WIS. ADMIN. CODE § Ag 134.06, *see Shands*, 115 Wis. 2d at 354, reiterated that "a 'cardinal rule in interpreting statutes' is to *favor a construction which will fulfill the purpose of the statute over a construction which defeats the manifest object of the act*," *id.* at 356 (emphasis added).[2] The supreme court explained that § 100.20(5) "gives any person who suffers damages because of a violation of the administrative regulations, including Ch. 134, a right to recover twice the amount of pecuniary loss, together with costs, including a reasonable attorney fee." *See id.* at 357. The court acknowledged that "generally, except for court costs and fees, a plaintiff may not recover attorney fees and expenses of litigation . . . unless such liability arises from specific statutory provisions or the contract of the parties." *Id.* Nevertheless, the court concluded that "a tenant who has suffered pecuniary loss because of a violation of Wis. Adm. Code Ch. Ag 134 shall recover reasonable attorney fees for appellate review undertaken to attack or defend a trial court's

---

[2] WISCONSIN ADMIN. CODE ch. Ag 134 was subsequently renumbered ch. ATCP 134. *See* WIS. ADMIN. CODE ch. ATCP 134 (1999), at 541.

decision in the suit," *id.* at 359, consistent with the consumer protection principles underlying the statute and the administrative rule. The supreme court articulated four bases for its conclusion, all of which are applicable to this appeal.

¶ 25. First, the supreme court explained that allowing tenants to recover double damages and attorney fees "encourages injured tenants to bring legal actions to enforce their rights under the administrative regulations." *See id.* at 358. Quite obviously, lease provisions like paragraph seventeen would deter tenants from legally resisting landlords' efforts to enforce the terms of a lease even when the terms might be unlawful.

¶ 26. Second, the supreme court explained: "[T]he tenant who sues under [WIS. STAT. § 100.20(5)] acts as a 'private attorney general' to enforce the tenants' rights set forth in the administrative regulations. Thus, the individual tenant not only enforces his or her individual rights, but the aggregate effect of individual suits enforces the public's rights." *Id.* Similarly, tenants who, like the McTaggarts, invoke both the administrative rule and the statute in defending against a landlord's suit, "enforce[ ] the public's rights."

¶ 27. Third, the supreme court emphasized that "tenant suits have the effect of deterring impermissible conduct by landlords because, if they violate the administrative regulations, they will be subject to double damages and will be responsible for costs, including attorney fees." *Id.* Similarly, tenants who, like the McTaggarts, invoke both the administrative rule and the statute in defending against a landlord's suit, "deter[ ] impermissible conduct by landlords."

¶ 28. Fourth, the supreme court pointed out that "private tenants['] actions provide a necessary backup

to the state's enforcement powers" under WIS. STAT. § 100.20, *id.*, and therefore "constitute an enforcement mechanism reinforcing that of the justice department," *id.* at 359. Clearly, that is no less so when tenants, like the McTaggarts, invoke both the administrative rule and the statute against a landlord suing under a lease containing an illegal provision that would reduce a tenant's legal leverage.

¶ 29.    Paragraph seventeen violates WIS. ADMIN. CODE § ATCP 134.08(3). By requiring tenants to pay the landlord's attorney fees and costs in any legal action "that Supreme Builders shall be obliged to commence . . . in order to enforce the terms and conditions of any portion of this lease and amendment," paragraph seventeen shifts the balance of legal power between landlords and tenants, contrary to the clear intentions of the legislature and the Department of Agriculture, Trade and Consumer Protection. To conclude that the remedy is merely to sever the illegal provision is to eliminate the deterrent power of § ATCP 134.08(3). *See Shands*, 115 Wis. 2d at 359 (in action pursuant to WIS. STAT. § 100.20(5), tenant "is not successful until he or she has actually recovered damages and attorney fees").

¶ 30.    At best, the majority reaches a result satisfying what it deems the equities of the instant case. The equities, however, rest in facts beyond the summary judgment record. Moreover, and most significantly in this case, the majority bases its legal conclusion about Supreme Builder's lack of "serious moral turpitude" on its own inference about what was *not* Supreme Builder's standard practice—an inference unsupported by the record and countered by the face of the addendum containing paragraph seventeen, as

573

well as by the face of Addendum C–2, which also contains the "Supreme Builders" title.

¶ 31. And most dangerously, the majority opinion undermines the four consumer protection principles articulated by our supreme court in *Shands*. Under the majority's interpretation, WIS. ADMIN. CODE § ATCP 134.08 now reads, between the lines:

> ATTENTION LANDLORDS:
>
> DO NOT REQUIRE TENANTS TO PAY YOUR ATTORNEYS' FEES OR COSTS IN ANY LEGAL ACTION OR DISPUTE.
>
> HOWEVER, IF YOU DO, YOU PROBABLY WILL GET AWAY WITH IT.
>
> BUT IF YOUR TENANT REALIZES THE REQUIREMENT IS UNLAWFUL, AND IF YOUR TENANT IS ABLE TO GO TO COURT TO CHALLENGE IT, YOU WILL NOT BE ALLOWED TO ENFORCE THE UNLAWFUL REQUIREMENT.
>
> BUT DO NOT WORRY. ALTHOUGH YOU WILL NOT BE ALLOWED TO ENFORCE THE UNLAWFUL REQUIREMENT, YOU WILL SUFFER NO OTHER CONSEQUENCES.

That is not what the legislature or the department intended. That is not what *Shands* permits. Accordingly, I respectfully dissent.

# ADDENDUM A

## SUPREME BUILDERS
## ADDITIONAL CONDITIONS TO THE LEASE
FOR JOHN AND SUSAN MCTAGGART
AT 121 Chaffee Road, Apt. 207

1. Rent is due and payable on or before the first of each month. All rental payments are to be made payable to Supreme Builders and mailed directly to 1491 South 98th Street, Suite No. 104, West Allis, WI 53214. Rent not received or postmarked on or before the third day of the month shall be subject to a late charge of $50.00. Non-sufficient funds checks shall be subject to a charge of $50.00 each. Waiver of either of these charges shall not constitute a waiver of future charges.

2. All rent and security deposits must be paid prior to occupancy. All security deposits must be regularly increased in order to be equal to the monthly rental amount.

3. All leases shall be one (1) year unless provisions are arranged with Supreme Builders. Any tenant who does not wish to renew his or her lease at the conclusion of this one year lease period shall provide Supreme Builders a 60-day written notice prior to the expiration of the lease. Such notice must recite a vacating date at the end of a month. Any tenant who wishes to renew his or her lease must also provide Supreme Builders with a 60-day written notice.

4. If the tenancy is terminated for any reason prior to the normal expiration date of the lease, tenant shall be responsible for all advertising costs attributed pro-rata to the re-rental of the apartment unit. Tenant may relieve Supreme Builders of the obligations of advertising the apartment for rent by a specific prior written notice. Thereafter Supreme Builders will not advertise the unit for rent and tenant agrees it shall not claim that Supreme Builders did not use appropriate efforts to re-rent the apartment unit. Advertising shall then be the sole obligation of the tenant.

   If a tenant unjustifiably removes from the premises prior to the effective date for termination of the tenant's tenancy and defaults in payment of rent, or if the tenant is removed for failure to pay rent or any other breach of a lease, the landlord can recover rent and damages. The landlord can recover, in addition to rent and other elements of damage, all reasonable expenses of listing and advertising incurred in re-renting and attempting to re-rent. If the landlord has other similar premises for rent and receives an offer from a prospective tenant not obtained by the vacating tenant, it is reasonable for the landlord to rent the other premises for the landlord's own account in preference to those vacated by the defaulting tenant. (See Section 704.29, Wisconsin Statutes).

5. All individuals occupying tenant's unit must be listed on the lease. If anyone who is not listed on the lease occupies the unit, this is a violation of tenants lease and could lead to termination of said lease. (See Lease Lines 33-36 and Lines 100-108.)

6. Tenant agrees not to assign this agreement or sub-lease the premises or any part thereof without prior written approval of Supreme Builders.

7. Any noise or disturbance which interferes with the comfort or well-being of other tenants is not permitted. Tenants who create such a noise or disturbance will receive a written notice which could lead to termination of the lease. Tenants are responsible for the actions of their guests and visitors.

8. Tenant agrees to pay for damages to the premises or fixtures caused by tenant, family, guests or visitors through carelessness or negligence.

9. Tenants shall not permit trash or garbage to accumulate anywhere upon the premises and shall promptly dispose of such trash and garbage in the dumpsters provided for that purpose. All trash and garbage shall be securely bagged and placed inside these containers. The building manager shall be notified concerning the disposal of large items so that special arrangements can be made. Under no circumstances may flammable materials be placed in these containers.

   The recycling program in Wisconsin became state law since January 1, 1995. All recyclable items must be separated and placed inside the appropriate containers provided.

10. It is the tenant's responsibility to obtain Apartment Dweller's insurance. Neither Supreme Builders or its representatives may be held responsible for any personal property which may be lost, stolen or damaged. No waterbeds may be brought or used upon the premises without prior written consent of Supreme Builders. Such consent shall not be unreasonably withheld provided that the tenant first obtains a policy of liability insurance covering Supreme Builders and other tenants against any and all losses resulting from leakage or from the weight of such bed; such coverage shall include, without limitation, bodily injury and property damage. A certificate of insurance evidencing a minimum of $100,000 00 public liability insurance coverage shall be provided to Supreme Builders prior to the move-in of the waterbed.

personal items shall be kept in tenants apartment, garage space or storage area.

12. OVERNIGHT PARKING IN THE VISITOR PARKING AREAS IS CONSIDERED BETWEEN THE HOURS OF 2:30 A.M. and 6:00 A.M. Any individual's vehicle parked in the parking areas between these hours must notify in advance the building manager before 11:00 P.M. Any vehicle parked on these lots without proper notification will be ticketed and/or towed at the vehicle owner's expense. _____ (Initials)

13. Underground parking spaces are assigned to each apartment. Tenants shall use these assigned spaces for all overnight parking. Tenants are not allowed to park their vehicles in the visitor parking areas overnight. Visitors or guests are not allowed to park their vehicles in the underground parking areas.

14. The underground parking area is strictly for entrance and exit for the building. No repairs or maintenance of any type on vehicles shall be allowed in underground or outside parking areas.

15. No recreational activities of any kind are allowed in garages, garage entrance ramps or the parking areas.

16. Tenants may not use any part of the premises for the conduct of any business, trade or occupation without first obtaining prior written consent of Supreme Builders.

17. In the event that Supreme Builders shall be obliged to commence legal action in order to enforce the terms and conditions of any portion of this lease and amendment, the tenant shall be liable to Supreme Builders for all Supreme Builders' costs, disbursements and expenses incurred including, without limitation, reasonable attorney fees incurred.

18. The written consent referred to herein and in the lease itself shall not be valid unless signed by a Supreme Builders authorized agent.

19. Under no circumstances may all or any part of the security deposit called for in this lease be used or applied by the tenant for the payment of rent.

20. Supreme Builders is expressly granted permission to co-mingle tenant's security deposit with Supreme Builders other funds. Supreme Builders is not required to maintain the security deposit in a separate account.

21. Dogs are not allowed on the premises at anytime. If any tenant and/or their guest is found to have a dog on the premises, this violation could lead to termination of the tenant's lease.

22. Tenant may with prior written consent of Supreme Builders, keep a pet in the unit. Tenant agrees to pay the following pet deposit of $ 845.00 _____ set amount to pay for any damage or cleaning attributed to the pet. Pets include any animals, birds or fish.

23. If a tenant wishes to have a cat(s) in the unit, tenant must provide Supreme Builders a copy of a vets certificate demonstrating the cat(s) have been spayed or neutered and declawed (all four paws) in addition to the above pet deposit.

24. In the event repairs are required, tenant shall notify the office by telephone between the hours of 8:30 a.m. and 4:30 p.m. Monday through Friday except in the case of any emergency, in which event tenant should notify the building manager. An emergency is considered to be an event or condition that is life-threatening, or if not attended to immediately, will cause irreparable harm or damage.

25. Tenants must have window trimmings (drapes, blinds) on the front windows within thirty (30) days of occupancy.

26. All leases and extensions thereof, expire at 11:59 A.M. on the last day of the term with all keys turned into the office. Tenant agrees to pay storage and additional handling charges of the new tenant, if such expense is incurred by reason of tenant not being out by this deadline. Lease terms commence at 12:00 NOON on the first day of the term.

27. Tenant acknowledges that this addendum constitutes a part of the agreement with Supreme Builders and is considered as a part of the lease to which it is attached.

_July 8, 1996_  
DATE

_Kelly Lynn Baird_  
SUPREME BUILDERS REPRESENTATIVE

_7-12-96_  
DATE

_John McTaggart_  
TENANT      JOHN MCTAGGART

_7/12/96_  
DATE

_Susan McTaggart_  
TENANT      SUSAN MCTAGGART

DATE                    TENANT

TENANT(S) PARKING SPACE NO.   121-207   and   121-207
TENANT(S) RECEIVED _2_ GARAGE DOOR OPENER(S) AND PAID DEPOSIT OF $ 100.00
TENANT(S) WAS GIVEN THE FOLLOWING KEYS:   ENTRY ____ APARTMENT ____
MAILBOX ____ STORAGE ____

576