Robert J. BAIERL, d/b/a Supreme Builders, Plaintiff-Appellant,

v.

John MCTAGGART and Susan McTaggart, Defendants-Respondents-Petitioners.

Supreme Court

*No. 98–3329. Oral argument May 29, 2001.—Decided July 11, 2001.*

2001 WI 107

(Also reported in 629 N.W.2d 277.)

For the defendants-respondents-petitioners there were briefs by *David R. Sparer, Jason H. Klimowicz* and *King Street Law Collective, Inc.*, Madison, and oral argument by *David R. Sparer*.

For the plaintiff-appellant there was a brief by *Thomas L. Frenn, Roy H. Nelson* and *Petrie & Stocking S.C.*, Milwaukee, and oral argument by *Thomas L. Frenn*.

An amicus curiae brief was filed by *Teel D. Haas*, assistant legal counsel, Wisconsin Department of Agriculture, Trade and Consumer Protection, and oral argument by *Teel D. Haas*.

An amicus curiae brief was filed by *Laurence J. Dupuis, Jeffrey R. Myer, Mark A. Silverman* and *Legal*

*Action of Wisconsin, Inc.*, Milwaukee, on behalf of Legal Action of Wisconsin, Inc.

¶ 1. ANN WALSH BRADLEY, J. The defendant-tenants, John and Susan McTaggart (McTaggarts), seek review of a published decision of the court of appeals reversing the circuit court's grant of summary judgment in their favor.[1] The McTaggarts assert that the landlord-plaintiff, Robert Baierl (Baierl), d/b/a Supreme Builders, may not enforce a residential lease that includes a provision which is specifically prohibited by Wis. Admin. Code § ATCP 134.08(3) (Apr. 1993). The circuit court agreed and invalidated the lease, concluding that the provision violated § ATCP 134.08(3).

¶ 2. We determine that because the lease includes a provision in violation of § ATCP 134.08(3), the landlord, Baierl, may not enforce the lease against the tenants. Holding the lease unenforceable by the landlord not only advances the intent underlying § ATCP 134.08(3), but prevents the objectives of the regulation from being wholly undermined. Accordingly, summary judgment was properly granted in the McTaggarts' favor and we reverse the decision of the court of appeals.

I

¶ 3. The controlling facts are not in dispute. In July 1996, the McTaggarts entered into a residential lease with Baierl. Under the lease, the McTaggarts agreed to rent an Oconomowoc apartment owned by

[1] *Baierl v. McTaggart*, 2000 WI App 193, 238 Wis. 2d 555, 618 N.W.2d 754 (reversing judgment of Circuit Court for Milwaukee County, Judge Charles F. Kahn, Jr., presiding).

Baierl for a period of one year. The lease was to run from August 1, 1996, to July 31, 1997.

¶ 4. The lease documents consisted of a standard form residential lease and several addenda. Important to our discussion is Addendum A, which contained the following provision purportedly requiring the tenant to indemnify the landlord for all costs and attorneys fees incurred in enforcing the lease agreement:

> In the event that Supreme Builders shall be obliged to commence legal action in order to enforce the terms and conditions of any portion of this lease and amendment, the tenant shall be liable to Supreme Builders for all Supreme Builders' costs, disbursements and expenses incurred including, without limitation, reasonable attorney fees incurred.

The provision in the lease is in direct violation of Wis. Admin. Code § ATCP 134.08(3), which prohibits as an unfair trade practice the inclusion of any clause requiring a tenant to pay a landlord's attorneys fees and costs:

> ATCP 134.08 Prohibited rental agreement provisions. No rental agreement may:
>
> . . .
> (3) Require payment, by the tenant, of attorney's fees or costs incurred by the landlord in any legal action or dispute arising under the rental agreement. This does not prevent the recovery of costs or attorney's fees by a landlord or tenant pursuant to a court order under ch. 799 or 814, Stats.

Wis. Admin. Code § ATCP 134.08(3) (Apr. 1993).[2]

---

[2] All subsequent references to Wis. Admin. Code § ATCP 134.08(3) are to the April 1993 version in effect at the time the lease was entered.

¶ 5. In November 1996, the McTaggarts informed Baierl that they would be vacating the apartment in January 1997, prior to the expiration of the lease term. The following January, the McTaggarts vacated the apartment and moved to Ohio for employment reasons. At that time, the McTaggarts instructed Baierl to deduct the January 1997 rent from the security deposit they had paid upon leasing the apartment.

¶ 6. Subsequent to the McTaggarts' premature departure from the apartment, Baierl deducted costs for damages and the January rent from the McTaggarts' security deposit. Unable to re-rent the apartment, Baierl then withheld the remainder of the deposit and sought to enforce the lease. After unsuccessfully demanding payment, Baierl brought this action in Milwaukee County Circuit Court to collect damages under the lease.

¶ 7. In response, the McTaggarts asserted that the lease was void and unenforceable on the grounds that the inclusion of the provision requiring the tenants to pay attorneys fees and costs violated § ATCP 134.08(3). The McTaggarts also counterclaimed that Baierl wrongfully retained their security deposit under § ATCP 134.06[3] to satisfy rent for which they had no liability under the void lease. Accordingly, they sought

---

[3] Wisconsin Admin. Code § ATCP 134.06(3)(a) states, in pertinent part:

(3) SECURITY DEPOSIT WITHHOLDING; RESTRICTIONS.
(a) A landlord may withhold from a tenant's security deposit only for the following:

. . .

2. Unpaid rent for which the tenant is legally responsible, subject to s. 704.29, Stats.

Wis. Admin. Code § ATCP 134.06(3)(a)2 (June 1999).

double damages and costs and attorneys fees under Wis. Stat. § 100.20(5) (1995–96).[4]

¶ 8. Upon the McTaggarts' motion, the circuit court granted summary judgment in their favor. The circuit court concluded that because the inclusion of that provision was prohibited by § ATCP 134.08(3), the entire lease was void. As a consequence of the invalidation of the lease, the court awarded damages to the McTaggarts in the amount of the security deposit remaining after deduction of the January 1997 rent and other uncontested deductions. Pursuant to Wis. Stat. § 100.20(5), the court doubled these damages and awarded the McTaggarts reasonable attorneys fees.

¶ 9. After unsuccessfully seeking reconsideration of the circuit court's grant of summary judgment, Baierl appealed. In a divided decision, the court of appeals reversed. *Baierl v. McTaggart*, 2000 WI App 193, 238 Wis. 2d 555, 618 N.W.2d 754. The majority explained that under common law contract principles, as expressed in *Simenstad v. Hagen*, 22 Wis. 2d 653, 126 N.W.2d 529 (1964), a contract containing an illegal provision may nonetheless be enforced if severance of the illegal provision would not defeat the primary purpose of the contract. 2000 WI App 193, ¶¶ 7–8. The court concluded that the purpose of the lease could be satisfied absent the illegal clause. *Id.* at ¶ 10. It then examined the equities of this case and determined that given the McTaggarts' breach, the equities favored Baierl. *Id.* at ¶ 11 & ¶ 13.

¶ 10. The dissent argued that the illegal lease provision could not merely be severed and the remainder of the contract enforced. *Id.* at ¶¶ 23–31 (Schudson, J., dissenting). To do so, the dissent maintained, under-

---

[4] All subsequent references to the Wisconsin Statutes are to the 1995–96 volumes unless otherwise noted.

mines the protection provided to consumers by Wis. Admin. Code ATCP ch. 134 and removes the deterrent effect of § ATCP 134.08(3). *Id.*

II

¶ 11. We review a grant of summary judgment applying the same methodology as employed by the circuit court. *Grams v. Boss,* 97 Wis. 2d 332, 337–39, 294 N.W.2d 473 (1980). Summary judgment is appropriate if the record reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2).

¶ 12. As a general matter, Wisconsin courts seek to enforce contracts deliberately made by the parties rather than set them aside. *Burstein v. Phillips,* 154 Wis. 591, 594, 143 N.W. 679 (1913). However, the preference for enforcing bargains may give way where a contract "violates a statute, rule of law, or public policy." *Continental Cas. Co. v. Wisconsin Patients Comp. Fund,* 164 Wis. 2d 110, 117, 473 N.W.2d 584 (Ct. App. 1991).

¶ 13. In the present case it is undisputed that the inclusion of this lease provision, requiring the tenant to indemnify the landlord for costs and attorneys fees incurred in enforcing the lease, is a violation of Wisconsin law. The Department of Agriculture, Trade and Consumer Protection (Department) has exercised its rule-making authority under Wis. Stat. § 100.20(2)(a) and specifically determined that the inclusion of such a clause in a residential lease is an unfair trade practice. The conduct of inserting the clause into a lease constitutes the violation and is punishable by law. Under § 100.26(3), a person who "neglects or fails to obey any

regulation or order" promulgated under § 100.20 is subject to a fine and potential imprisonment. Wis. Stat. § 100.26(3).

¶ 14. The sole disputed question before us is whether Baierl may enforce the lease in light of the illegal inclusion of this lease provision.[5] This presents us with a question of law. We review such questions independently of the legal conclusions reached by the circuit court and the court of appeals. *Deutsches Land, Inc. v. City of Glendale*, 225 Wis. 2d 70, 79–80, 591 N.W.2d 583 (1999).

¶ 15. In addressing whether Baierl may enforce the lease, the parties have staked out two divergent positions grounded in Wisconsin case law. On the one hand, Baierl, like the court of appeals majority, relies on the rule of severability articulated in *Simenstad v. Hagen*, 22 Wis. 2d 653. In *Simenstad* the court determined that a contract may survive if an illegal clause can be severed from the remainder of the contract without defeating the primary purpose of the bargain. *Id.* at 662. Baierl argues that here the lease may be enforced, notwithstanding the illegal provision, because that provision is a nonessential clause that is properly severable from the remainder of the lease.

¶ 16. On the other hand, the McTaggarts advance that a violation of an administrative regulation promulgated under § 100.20 results in the unenforceability of a contract. They rely on two cases

---

[5] At oral argument, Baierl clarified that he did not dispute the circuit court's calculation of damages, but rather only the legal premise on which they were awarded. Accordingly, because we ultimately agree with the circuit court that Baierl may not enforce the lease provisions, we need not revisit the circuit court's calculation of damages.

641

where that result was obtained. In *Perma-Stone Corp. v. Merkel*, 255 Wis. 565, 39 N.W.2d 730 (1949), this court declared a home repair contract void where a roofing and siding contractor had required a customer to sign a judgment note as part of the contract, in violation of an administrative regulation directed at that industry. Similarly, in *Huff & Morse, Inc. v. Riordon*, 118 Wis. 2d 1, 345 N.W.2d 504 (Ct. App. 1984), the court of appeals concluded that an automobile repair shop's violation of a regulation requiring a written estimate prior to repair rendered a contract invalid and prevented the shop from collecting under the contract.

¶ 17. Having examined both parties' arguments, we conclude that neither party's position is tenable as an absolute proposition. Both positions fail to give due consideration to the principle that is ultimately controlling: the intent underlying the statute or regulation that was violated.

¶ 18. The rule of severability announced in *Simenstad* is not unconditional. Where the illegality of a contractual provision arises from the violation of a statute, the rule of severability is qualified by the controlling statute. *See Simenstad*, 22 Wis. 2d at 661 ("unless this result is prohibited by statute"). Thus, even if a lease provision is collateral to the underlying bargain of the lease, the severability analysis requires an examination of the controlling statute or, as in this case, the administrative regulation.

¶ 19. The McTaggarts' position also sweeps too broadly. A violation of a regulation promulgated under § 100.20 does not result in per se unenforceability of a contract. We have explained that it is "grave error" to assert that all contracts in violation of a statute are

unenforceable. *Chapman v. Zakzaska*, 273 Wis. 64, 66, 76 N.W.2d 537 (1956). The controlling analysis in determining whether a statutory or regulatory violation renders a contract unenforceable is the intent underlying the provision that was violated. *Vic Hansen & Sons, Inc. v. Crowley*, 57 Wis. 2d 106, 117, 203 N.W.2d 728 (1973); *Posnanski v. Hood*, 46 Wis. 2d 172, 181, 174 N.W.2d 528 (1970) (applying legislative intent analysis to determine whether violation renders lease unenforceable); *cf. Huff & Morse, Inc.*, 118 Wis. 2d at 10 (examining "major purpose" behind administrative regulation).

¶ 20. Moreover, the McTaggarts' arguments have focused on the question of whether the lease is "void." We do not view the question as whether the lease is void, *i.e.*, a legal nullity, because in such case no party could enforce the lease. Where a statute is intended to protect one party to a contract, that party may seek enforcement notwithstanding the violation of the statute enacted for their protection. *See Restatement (Second) of Contracts* § 179 cmt. c (1981). Thus, the question in this case is not whether the lease is void. If it were, not even the tenants could enforce the lease. The question is one of the enforceability of the lease by Baierl in light of the intent underlying the regulation at issue.

¶ 21. Because it is ultimately the intent underlying the regulation that dictates whether the clause is severable and or whether the inclusion of the clause renders the entire contract unenforceable, we must examine § ATCP 134.08(3). Administrative rules and regulations are construed in the same manner as statutes. *Moonlight v. Boyce*, 125 Wis. 2d 298, 303, 372 N.W.2d 479 (Ct. App. 1985). It is fundamental that we

must favor a construction of a statute or regulation which will fulfill the intent of the statute or regulation over one which defeats its manifest object. *Shands v. Castrovinci*, 115 Wis. 2d 352, 356, 340 N.W.2d 506 (1983). Where one of several interpretations of a statute or regulation is possible, the court must ascertain the underlying intent from the language in relation to the subject matter, history, and object intended to be accomplished. *Id.*

¶ 22. We look first to the language of § ATCP 134.08 to determine whether the regulatory violation renders the entire lease unenforceable or whether the illegal clause is properly severable. An examination of the language provides important insight into the nature of the regulatory prohibition. The regulation is entitled "Prohibited rental agreement provisions" and states that "no rental agreement may require" the tenant to be obligated for the landlord's costs and attorneys fees incurred in enforcing the lease. Wis. Admin. Code § ATCP 134.08(3). The language of § ATCP 134.08(3) indicates that the prohibited act is the inclusion of a clause claiming to obligate the tenant to reimburse the landlord's costs and attorneys fees.

¶ 23. The language of the enabling statute, Wis. Stat. § 100.20, also provides insight into the nature of the prohibition in § ATCP 134.08(3). Section 100.20 generally prohibits "[u]nfair methods of competition and unfair trade practices in business." Wis. Stat. § 100.20(1). The Department is given the mandate of promulgating rules, such as § ATCP 134.08, to proscribe specific unfair trade practices. Wis. Stat. § 100.20(2). Thus, not only is the inclusion of the provision at issue a prohibited act under § ATCP 134.08(3), but it is also properly denominated an unfair trade practice.

644

¶ 24. While we are able to glean much from the language of the regulation and statute, ultimately § ATCP 134.08 is silent as to the effect of a violation on a residential lease. This silence renders the regulation ambiguous as to its effect, if any, on a lease that violates its provisions. *See Forest County v. Goode*, 219 Wis. 2d 654, 664, 579 N.W.2d 715 (1998). Accordingly, we turn to the subject matter, history, and object of the regulation to further ascertain the Department's intent.

¶ 25. The subject matter of § ATCP 134.08, and ATCP chapter 134 in general, reflects the Department's foray into the realm of residential landlord-tenant relations, an area fraught with consumer protection concerns. Courts have long acknowledged an inherent inequality of bargaining power between landlords and tenants. *See, e.g., Javins v. First Nat'l Realty*, 428 F.2d 1071, 1080 (D.C. Cir. 1970). As one court has explained:

> Clearly, landlords have greater bargaining power than tenants in residential leases. A tenant must live somewhere. The tenant has no meaningful choices. He can accept this landlord or go to another landlord who charges the same rent and asks the tenant to sign the same standard form lease.

*Taylor v. Leedy & Co.*, 412 So. 2d 763, 766 (Ala. 1982). Thus, when examining the history and object of § ATCP 134.08(3), we bear in mind that the Department regulates against this backdrop. Its regulations are an attempt to alleviate the residential tenant's limited bargaining power. With § ATCP 134.08, the Department has sought to do this by prohibiting as

unfair trade practices the inclusion of certain provisions in residential leases.

¶ 26. We next examine the history of § ATCP 134.08(3). That history is well-documented and confirms that the Department sought not only to prevent a source of unfairness to residential tenants, but also sought the more particularized goal of preventing tenants from being intimidated into forgoing their legal rights.

¶ 27. The Department promulgated § ATCP 134.08 following an extensive study of Wisconsin landlord-tenant relations at the request of the legislature. *See* Wisconsin Department of Agriculture, Trade and Consumer Protection, *Landlord-Tenant Report to the Joint Committee on Finance of the Wisconsin Legislature* (Dec. 1, 1978). After holding fact-finding hearings at which landlord and tenant representatives testified, the Department found that among the areas in need of regulation were written lease provisions commonly found in residential leases. *Id.* at 11. The Department identified certain objectionable provisions, the inclusion of which could be considered unfair trade practices. *Id.* at 61–62. Among these were provisions that require a tenant to pay all attorneys fees and costs incurred by the landlord in a dispute between the two parties. *Id.*

¶ 28. In concluding that such clauses could be subject to regulation, the Department noted that residential leases are not usually negotiated contracts, but standard pre-printed form documents. *Id.* at 60. The Department also focused on witness testimony explaining that the inclusion of objectionable clauses in these form leases, whether or not they are enforced, has the consequence of intimidating tenants into forgoing their

legal rights. *Id.* at 61. The Department placed emphasis on the following testimony:

> "The general problem with respect to lease provisions is not only the concessions that they force from tenants but also the extent to which they intimidate tenants from pursing their rights. In other words, many lease provisions have been found to be void because they are either unconscionable or unconstitutional; but their existence in a lease continues to have an unjust effect because tenants believe them to be valid. As a result, tenants either concede to unreasonable requests of the landlords or fail to pursue their own lawful rights."

*Id.*[6]

¶ 29. The Department also noted testimony from some landlords who explained that these objectionable provisions were not enforced, and therefore caused the tenant no serious problems. *Id.* at 62. The Department concluded that this fact, if true, merely aggravated the unfairness of these objectionable provisions:

> If [these provisions are not actually enforced], however, there can be no explanation for the inclusion of the provisions in the rental agreement, unless they are intended solely for the purpose of intimidation. This purpose, far from legitimizing the provisions, merely compounds the alleged unfairness.

*Id.* at 62.

¶ 30. The final factor that we examine is the object of the regulation. We are able to accurately identify the object intended by § ATCP 134.08(3) from the

---

[6] The quoted testimony was that of Attorney Robert Andersen, Legal Action of Wisconsin, Legislative and Administrative Representation Program.

documented history of § ATCP 134.08. The regulation was intended not only to prevent the extraction of the concession of reimbursed attorneys fees and costs from tenants by landlords, but also to prevent the chilling effect that the inclusion of a clause claiming to require the payment of attorneys fees and costs has on a tenant's assertion of legal rights. The Department relied on and was persuaded by the fact that, although the clause may be unenforceable, tenants who read such a clause in a residential lease will forgo pursuing their rights under the lease out of fear that they will be forced to bear the landlord's litigation expenses.

¶ 31. This regulatory objective is of particular import in light of the overall statutory and regulatory scheme established to encourage private enforcement of legal rights. The enforcement of private legal rights is a significant goal in the realm of landlord-tenant relations. As this court explained in *Shands v. Castrovinci*, 115 Wis. 2d 352, 340 N.W.2d 506 (1983), the legislature encourages private litigation by tenants to enforce their legal rights through the attorneys fees and double damages provisions of Wis. Stat. § 100.20(5). Private legal actions by tenants not only enforce the individual rights of the tenant, but allow tenants to serve as "private attorneys general," enforcing the tenant rights preserved under the administrative code. *Id.* at 358. In *Shands*, we also explained that enforcement of the administrative code through individual actions serves a deterrent effect, curbing impermissible conduct by landlords. *Id.* Such private action is a necessary backup to state enforcement actions given the limited resources available to the state that prevent state actions against every violator. *Id.*

¶ 32. As *Shands* makes clear, private tenant actions are an integral part of the enforcement of ATCP ch. 134. The prohibition of lease provisions tending to intimidate tenants from taking action to enforce their rights must be viewed as part of the overall legislative and regulatory scheme described in *Shands*.

¶ 33. Having examined the subject matter, history, and object of § ATCP 134.08(3) to determine the intent underlying the regulation, we conclude that enforcement of a lease containing the prohibited provision would not only fail to advance the goals of § ATCP 134.08(3), but would undermine them entirely.

¶ 34. The Department sought to eliminate such clauses and the intimidation of tenants that the inclusion of such unenforceable clauses poses. However, were we to allow the clause to be severed and the remainder of the lease to be enforced, neither of those goals would be advanced. The prohibited clauses, the inclusion of which constitutes an unfair trade practice, would continue to appear in leases. Landlords would have little incentive to omit such clauses and change their practice. A landlord could insert the clauses with relative impunity, knowing that the court will merely ignore this unfair trade practice by severing the clause.

¶ 35. Not only would landlords likely suffer no consequences from the violation, but they would also reap the unfair benefit of the clause's inclusion—the potential intimidation that such a clause poses. By the undeterred inclusion of such clauses, tenants may continue to be intimidated into forgoing their legal rights. Thus, the Department's goal of eliminating tenant intimidation would be frustrated.

¶ 36. Allowing the clause to be severed and the remainder of the lease to be enforced by the landlord

also undercuts the effectiveness of the private enforcement contemplated under the regulatory scheme. In other contexts, we have relied upon the existence of administrative enforcement proceedings to conclude that certain legal violations are to be enforced solely by the governmental agency and not by a tenant through invalidation of a lease. *Posnanski*, 46 Wis. 2d at 181–82. However, in the present context, we cannot ignore that "[p]rivate tenant actions constitute an enforcement mechanism reinforcing that of the justice department." *Shands*, 115 Wis. 2d at 358–59. In light of the Department's concerns regarding tenant intimidation, permitting a landlord to enforce a lease containing the prohibited provision counteracts the larger goal of encouraging tenant enforcement of the administrative code to deter unlawful conduct on the part of landlords and to enforce public rights. *See Shands*, 115 Wis. 2d at 358.

¶ 37. Given the effect that severance of the illegal clause and enforcement of the remainder of the lease would have on the policy goals of the Department, we conclude that § ATCP 134.08(3) did not intend such a result. Thus, the illegally included lease provision cannot merely be severed and the remainder of the lease enforced. Because the enforcement of the lease would defeat the objectives of the regulation, we determine that the illegal inclusion of the provision renders the contract unenforceable by Baierl.

¶ 38. Finally, we note that Baierl is not being made victim of an obscure regulatory provision of which he could not be expected to be aware. Section ATCP 134.08 has been in existence since 1980, and its terms are made known to the public through Department publications. *See* Wisconsin Department of Agriculture, Trade & Consumer Protection, *The Wis-*

*consin Way: A Guide for Landlords and Tenants* 17, 28 (Aug. 1999).

¶ 39. On the other hand, we also acknowledge that the McTaggarts failed to live up to the terms of their bargain. Nevertheless, the controlling factor is the intent of the Department. That intent does not exclusively address tenants such as the McTaggarts who abandon their contractual obligations. Rather, that intent speaks to the tenants from whom the courts potentially will never hear—tenants who, in the determination of the Department, will forgo their legal rights when faced with a provision that states that they are responsible for their landlord's litigation costs. It is for those tenants that the intent of § ATCP 134.08(3) must be effectuated.

## III

¶ 40. In sum, we determine that a landlord who includes a provision specifically prohibited by Wis. Admin. Code § ATCP 134.08(3) in a residential lease may not enforce the terms of that lease. Having examined the underlying intent of § ATCP 134.08(3), we determine that allowing the enforcement of such a lease would not only fail to advance the intent of that regulation, but would undermine its objectives completely. We thus conclude that the circuit court properly granted summary judgment in the McTaggarts' favor. Accordingly, we reverse the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 41. N. PATRICK CROOKS, J. *(concurring)*. I agree with the majority's decision and write separately to make two additional points. First, the majority opinion should be a clarion call to landlords across the state to review their residential lease forms and ensure that they comply with Wis. Admin. Code § ATCP 134.08, so as not to have their leases inadvertently invalidated as a result of noncompliance.

¶ 42. Second, I write separately to emphasize that nothing in the majority's opinion forecloses a landlord from pursuing non-contract remedies, e.g., *quantum meruit*,[1] should a residential lease be found invalid because it violates Wis. Admin. Code § ATCP 134.08. Wisconsin courts have long recognized that where there has been a violation of a regulation, such as the one we have here, there may be recovery based upon *quantum meruit*. In *Zbichorski v. Thomas*, 10 Wis. 2d 625, 626, 103 N.W.2d 536 (1960), the defendant claimed that the contract she had with the plaintiff to replace the siding on her house with aluminum siding, and to do other work, was illegal. The claimed illegality was based upon a violation of a Wisconsin Department of Agriculture regulation, which required that contracts involving the sale of siding should be in writing, and that a correct copy should be left with the customer. *Id.* at 627. This court indicated that the plaintiff may be able to recover from the defendant based upon a claim of *quantum meruit*, even if it was determined

---

[1] *Quantum meruit* is defined as a "claim or right of action for the reasonable value of services rendered." *Black's Law Dictionary* 1255 (7th ed. 1999). *Black's* also notes that *"[q]uantum meruit* is still used today as an equitable remedy to provide restitution for unjust enrichment. It is often pleaded as an alternative claim in a breach-of-contract case so that the plaintiff can recover even if the contract is voided." *Id.*

that the contract was illegal. *Id.* at 626–27. The court of appeals has concluded that *quantum meruit* may be available as a means for an auto repair shop to recover for repairs done, even though the shop failed to comply with a Wisconsin Department of Agriculture regulation requiring the shop to provide a written estimate. *See Huff & Morse, Inc. v. Riordon*, 118 Wis. 2d 1, 345 N.W.2d 504 (Ct. App. 1984). Similarly, *quantum meruit* could provide a landlord whose residential lease is invalid with the means to bring a claim for recovery of rent owed.

¶ 43. Here, after the circuit court concluded that the lease was void, the court found that *quantum meruit* was proper. The court also found that, as a result, Baierl was entitled to the payment of rent through the end of January, 1997, and payment for other miscellaneous items. (*See* R. at 31:27.) Indeed, the McTaggarts did not contest the payment of rent for the time they lived in the apartment, or the payment of the other items, which were deducted from their security deposit. *See* majority op. at ¶ 8. They only contested Baierl's attempt to withhold the remainder of their deposit as rent for those months after they vacated the apartment. *Quantum meruit* was properly applied here, and it is worth reiterating that the majority's decision today does not bar such recovery.

¶ 44. For the reasons stated herein, I respectfully concur.

¶ 45. I am authorized to state that Justice JON P. WILCOX joins this opinion.

¶ 46. DIANE S. SYKES, J. *(dissenting)*. I respectfully dissent. The consumer protection code provides protection against unfair trade practices by, among

others, landlords. The majority opinion allows the tenants in this case to use the code not as a shield against an unfair trade practice by their landlord, but as a sword to escape legal responsibility for breaching their lease, and worse, as a means of enriching themselves in the process.

¶ 47. According to the majority, even though the McTaggarts inexcusably walked out on their lease more than six months early, they are entitled to 1) avoid liability for their intentional breach of lease; and 2) recover from their landlord double their security deposit, plus costs and actual attorneys' fees. In other words, the tenants intentionally inflicted a financial loss on the landlord, and the court says the landlord is not only precluded from recovering but is in fact required to pay the tenants who committed the breach in the first place, and who suffered no financial loss at all.

¶ 48. Surely the law does not allow, much less compel this bizarre result. This is nothing but a game of legal "gotcha." An enterprising tenants' attorney, his clients clearly in the wrong, scoured the fine print in the lease and found an obscure, absolutely unessential but nevertheless prohibited clause, and on that basis succeeded in persuading the trial court and five members of this court to deny enforcement of the entire lease, rather than simply invalidate the prohibited clause. This means the tenancy was month-to-month, and the McTaggarts win a windfall judgment of twice their security deposit, costs, and actual attorneys' fees.

¶ 49. Yes, the lease contains an addendum, which contains a clause, which contains a provision purporting to require the tenant to pay costs and attorneys' fees if the landlord ever had to take the tenant to court to enforce the lease. It is clause number 17 (of 27)

in Addendum A (there is also a "B" and a "C–2"), and it is definitely prohibited by the consumer code, Wis. Admin. Code § ATCP 134.08(3)(Apr. 1993). The landlord would never be able to enforce such a provision in a court of law. Indeed, the landlord *did not try* to enforce it in this case.

¶ 50. How this insignificant little clause buried in a six-page lease provides an excuse for the tenants' flagrant breach of lease—much less a basis for them to recover when they have suffered no loss whatsoever—is beyond me. I agree with the court of appeals' conclusion that, because the prohibited clause is nonessential, does not relate to the primary purpose of the bargain, and was not the result of moral turpitude, it can be severed, and the rest of the lease survives its severance. This is, in fact, the common law rule, as reflected in the Restatement of Contracts:

> § 603 UNESSENTIAL ILLEGAL PROVISION
> A bargain that is illegal only because of a promise or a provision for a condition, disregard of which will not defeat the primary purpose of the bargain, can be enforced with the omission of the illegal portion by a party to the bargain who is not guilty of serious moral turpitude unless this result is prohibited by statute. Recovery is more readily allowed where there has been part performance of the legal portion of the bargain.

*Restatement of the Law of Contracts* § 603 (1932).

¶ 51. We cited and applied this rule of severability in *Simenstad v. Hagen*, 22 Wis. 2d 653, 126 N.W.2d 529 (1964). *Simenstad* is factually distinguishable, but I see no reason why the common law rule of severability that it applied should not also apply here. This particular clause is unrelated to the primary purposes

and conditions of the lease, and therefore *Perma-Stone Corp. v. Merkel*, 255 Wis. 565, 39 N.W.2d 730 (1949), and *Huff & Morse, Inc. v. Riordon*, 118 Wis. 2d 1, 345 N.W.2d 504 (Ct. App. 1984), are distinguishable.

¶ 52. There is nothing in the text of the applicable statutes or rules that precludes severability or authorizes denying enforcement of the entire lease. *See* Wis. Stat. §§ 100.20(2) and (5), 100.26(3) (1995–96); Wis. Admin. Code § ACTP 134.08. The statutes provide for public remedies for unfair trade practice violations, including fines and incarceration. Wis. Stat. § 100.26(3). The statutes also specify a private remedy (suit for double damages, costs and reasonable attorneys' fees), but only for persons "suffering pecuniary loss because of [an unfair trade practice] violation." Wis. Stat. § 100.20(5). The statutes and rules are silent, however, on the issue of how a violation affects the enforceability of a contract. The question, therefore, is whether the lease as a whole, or just the prohibited provision, is unenforceable by the landlord.

¶ 53. I am not persuaded by the rationale of the majority that applying the common law rule of severability in this context would defeat the purpose of the regulatory scheme. Severance of the prohibited clause does not exacerbate unequal bargaining power between landlords and tenants, increase landlord intimidation of tenants, or produce a chilling effect on the assertion of tenants' rights. *See* majority op. at ¶¶ 25–30.

¶ 54. Landlords who commit unfair trade practices can be prosecuted by the state and sued by their tenants when the tenants suffer pecuniary loss as a result of the landlord's conduct. The majority opinion accurately notes the so-called "private attorneys general" function of the private right of action under the

consumer protection code. Majority op. at ¶¶ 31–32. But here, the tenants *caused* a pecuniary loss, they did not *suffer* one themselves. The McTaggarts did not sustain *any* financial loss *because of* the landlord's inclusion of the illegal attorneys' fees provision in the lease. I doubt they even knew it was there. The landlord never sought or threatened to enforce it. The "loss" only arises if the McTaggarts are allowed to use the attorneys' fees clause as a basis to invalidate the entire lease, thus requiring return of their security deposit. This case represents creative lawyering, but bad precedent.

¶ 55. Under the circumstances of this case, the court should enforce the contract—minus the prohibited clause—in a way that is consistent with its terms, with the law and the facts, with logic and with common sense. It declines to do so. I would affirm the court of appeals.

¶ 56. I am authorized to state that Justice DAVID T. PROSSER joins this dissenting opinion.