121 Langdon Street Group, Plaintiff-Respondent,
v.
Scott Heiligman and Raveen Raviendran, Defendants,
Mark Silverman, Defendant-Appellant.
No. 04-1352.
Court of Appeals of Wisconsin.
Opinion Filed: March 17, 2005.
¶1 LUNDSTEN, J.[1]
Mark Silverman appeals a circuit court judgment awarding money damages to his former landlord, 121 Langdon Street Group. He argues on appeal that 121 Langdon collected an excessive security deposit, that his lease with 121 Langdon was unenforceable on a number of grounds, that 121 Langdon obtained a wrongful eviction, that he was entitled to double damages for certain personal property, and that 121 Langdon failed to mitigate its damages. We reject Silverman's arguments and affirm the circuit court's judgment.

Background
¶2 Silverman and two co-tenants, Heiligman and Raviendran, entered into a one-year residential lease with 121 Langdon for August 15, 2000, to August 14, 2001. Rent was $1,500 per month, due on the first day of each month. In addition, 121 Langdon required a $1,500 security deposit. Heiligman never paid his share of the security deposit and paid no rent after November. Raviendran paid no rent after January.
¶3 The tenants vacated the apartment shortly after they received a fiveday notice on February 7, 2001. 121 Langdon began an eviction action and obtained a judgment of eviction in March 2001. 121 Langdon also sought damages, and ultimately received a money judgment against all three tenants. Silverman appeals.[2]

Discussion

Standard of Review
¶4 This case requires that we interpret and apply city ordinances, statutory provisions, and administrative regulations, all questions of law that we review de novo. Bruno v. Milwaukee County, 2003 WI 28, ¶6, 260 Wis. 2d 633, 660 N.W.2d 656 (city ordinances); Three & One Co. v. Geilfuss, 178 Wis. 2d 400, 413, 504 N.W.2d 393 (Ct. App. 1993) (statutes and administrative rules). In addition, the issues in this case depend upon the interpretation and application of the terms of a lease in order to determine the parties' rights under the lease, also a question of law subject to de novo review. Westhaven Assocs., Ltd. v. C.C. of Madison, Inc., 2002 WI App 230, ¶12, 257 Wis. 2d 789, 652 N.W.2d 819.[3]

Whether 121 Langdon Collected an Excessive Security Deposit in Violation of § 32.07 of the City of Madison General Ordinances
¶5 Silverman first argues that 121 Langdon collected an excessive security deposit in violation of a City of Madison ordinance, thereby entitling Silverman to damages under the ordinance. Madison General Ordinance § 32.07(2) reads, in part, as follows:
(a) In this section "security deposit" means the total of all payments and deposits given by a tenant to the landlord in a residential tenancy as security for the performance of the tenant's obligations, and includes but is not limited to all rent payments in excess of one month's prepaid rent ....
(b) The sum of all payments and deposits, held as security deposit shall not exceed the equivalent of one month's rent.
Since one month's rent was $1,500, the "security deposit" that 121 Langdon collected could not exceed $1,500.
¶6 Given that 121 Langdon had already required a $1,500 payment that it termed a security deposit, Silverman's argument interprets the ordinance to mean that any additional payment before the lease commenced would constitute an excessive security deposit. The circuit court's decision succinctly summarizes Silverman's argument in light of the terms of the lease:
Silverman argues that the $1,500 rent paid on or about August 1 was actually $750 rent and $750 security deposit. As I read the lease, it runs monthly from the 15th to the 14th of the following month. Rent is to be paid on the 1st of each month. The rent paid on or about August 1 covered the first month of tenancy, August 15 to September 14.
The court concluded that 121 Langdon did not hold an excessive security deposit under these circumstances. We agree with the circuit court's conclusion.
¶7 We focus on the ordinance language providing that a security deposit "includes ... all rent payments in excess of one month's prepaid rent." This language shows that the ordinance makes an exception that the "security deposit" does not include up to one month's prepaid rent. Here, in effect, the tenants prepaid one-half-month's rent. Silverman's interpretation reads the exception out of subsec. (2)(a) of the ordinance.

Whether the Lease is Unenforceable by 121 Langdon, Either Because the Lease Included a Provision that Violates § 32.11 of the Madison General Ordinances or Because 121 Langdon Violated WIS. ADMIN. CODE § ATCP 134.03
¶8 Silverman argues that 121 Langdon cannot enforce the lease for two reasons: (1) the lease included a provision that violates § 32.11 of the Madison General Ordinances, and (2) 121 Langdon violated WIS. ADMIN. CODE § ATCP 134.03(1) (Oct. 2004).[4]
¶9 Madison General Ordinance § 32.11 provides, in relevant part:
PROHIBITED RENTAL AGREEMENT PROVISIONS. No rental agreement may:
....
(8) Contain any provision which, if enforced or invoked, would violate Chapter 32 or other ordinance or state law.
WISCONSIN ADMIN. CODE § ATCP 134.03(1) provides:
Rental agreements and rules and regulations established by the landlord, if in writing, shall be furnished to prospective tenants for their inspection before a rental agreement is entered into, and before any earnest money or security deposit is accepted from the prospective tenant. Copies shall be given to the tenant at the time of agreement.
¶10 Because the record seemingly shows violations of these provisions and because 121 Langdon does not present developed argument to the contrary, we will assume there were violations.
¶11 Silverman's arguments that these violations preclude 121 Langdon from enforcing the lease are grounded in Baierl v. McTaggart, 2001 WI 107, 245 Wis. 2d 632, 629 N.W.2d 277. In Baierl, the supreme court concluded that a landlord who includes a provision prohibited by WIS. ADMIN. CODE § ATCP 134.08(3) in a residential lease may not enforce the terms of that lease. Baierl, 245 Wis. 2d 632, ¶40. Section ATCP 134.08 reads, in relevant part:
Prohibited rental agreement provisions. No rental agreement may:
....
(3) Require payment, by the tenant, of attorney's fees or costs incurred by the landlord in any legal action or dispute arising under the rental agreement.
The court in Baierl focused on the intent underlying the particular regulation at issue. Baierl, 245 Wis. 2d 632, ¶20. Relying also on the "chilling effect" of such clauses, id., ¶30, the Baierl court reasoned as follows:
The Department sought to eliminate such clauses and the intimidation of tenants that the inclusion of such unenforceable clauses poses. However, were we to allow the clause to be severed and the remainder of the lease to be enforced, neither of those goals would be advanced. The prohibited clauses, the inclusion of which constitutes an unfair trade practice, would continue to appear in leases. Landlords would have little incentive to omit such clauses and change their practice.
Id., ¶34. Basically, Silverman's argument is that the Baierl court's rationale with respect to § ATCP 134.08(3) should extend to both § ATCP 134.03 and the city ordinance.[5]
¶12 We acknowledge that some of the reasoning expressed in Baierl, both as quoted above and as otherwise set forth in that decision, arguably applies to the city ordinance at issue here and to any number of other provisions in WIS. ADMIN. CODE ch. ATCP 134. Nonetheless, we decline to extend Baierl as Silverman's argument suggests.
¶13 We focus on legislative intent, as did the supreme court in Baierl. Were we to extend the Baierl rule to WIS. ADMIN. CODE § ATCP 134.03, the rule could just as easily apply to any provision in ch. ATCP 134, meaning that extremely minor landlord transgressions would result in total unenforceability of a lease on the part of the landlord. For example, a lease could be rendered unenforceable if a landlord forgot or otherwise failed to provide a tenant with a receipt for a cash rent payment. See WIS. ADMIN. CODE § ATCP 134.03(2)(b). The department could not have intended such a result. Likewise, if we were to extend Baierl to the city ordinance, a landlord would be barred from enforcing a lease any time that a lease contained a provision that, "if enforced or invoked, would violate [Madison General Ordinances] Chapter 32 or other ordinance or state law." The Madison Common Council could not have intended such a result.

Whether the Lease Is Unenforceable Because 121 Langdon Failed to Require That a Parent of Each Tenant Guarantee the Lease as Provided in the Lease
¶14 Silverman next argues that the lease is not enforceable because it is conditioned upon a parent of each tenant guaranteeing the lease, a condition that was never satisfied. Silverman relies on Fox v. Catholic Knights Insurance Society, 2003 WI 87, ¶23 n.4, 263 Wis. 2d 207, 665 N.W.2d 181, in which the supreme court said: "We use the terms `condition precedent' and `condition subsequent' for convenience, but note that however described, conditions may be put upon contracts, such that the existence of the contract depends upon satisfaction of the condition." But Silverman's reliance on Fox is misplaced. Fox involved a life insurance policy application with a section entitled "Receipt for Payment and Conditional Insurance Agreement." That section provided that coverage would not begin until the applicant took a blood test. Id., ¶¶5-7 & n.2. In contrast, the terms that Silverman characterizes as "conditions" within the meaning of Fox appear in the lease itself as follows:
Other Landlord or Tenant obligations: First rental payment due August 1, 2000. No beer kegs on premises. A parent of each tenant to guarantee this lease.
These are not the sort of conditions contemplated in Fox that are prerequisites to a binding contract. By way of illustration, we doubt Silverman would conclude that the lease was automatically unenforceable if the landlord discovered a beer keg on the premises.
¶15 Silverman also seems to be contending that the lease is unenforceable because 121 Langdon failed to obtain a guarantee from each tenant's parents and that this failure constituted bad faith or intentional interference with a contract. It is unclear from Silverman's argument why the lease should be unenforceable, even if 121 Langdon failed to comply with the lease in this manner. In any event, Silverman's bad faith/intentional interference argument is transparently meritless. He relies on the mere fact of the breach itself and the fact that 121 Langdon told tenant Raviendran that his parents did not need to guarantee the lease. These facts, without more, are insufficient to show bad faith or intentional interference with a contract under the applicable standards. See WIS JICIVIL 2780, 3044.

Whether 121 Langdon Waived Its Right to Terminate by Accepting Rent Payments After Default and Therefore Obtained a Wrongful Eviction
¶16 Silverman next argues that 121 Langdon waived its right to terminate and evict by accepting rent payments subsequent to the tenants' defaults on the rent. He acknowledges there were defaults and that the lease provides that "[a]cceptance of delinquent payment does not constitute a waiver of that default or any other default under this Lease." Silverman nonetheless asserts that 121 Langdon's acceptance of rent payments after the defaults waived the defaults. He relies on Palmer v. City Livery Co., 98 Wis. 33, 34, 73 N.W. 559 (1897), which states that "the landlord who, with knowledge of the breach of the condition of a lease for which he has a right of re-entry, receives rent which accrues subsequently, waives the breach, and cannot afterwards insist on the forfeiture." Under Silverman's theory, 121 Langdon waived these defaults by accepting subsequent rent payments and, consequently, the termination of the tenancy was a wrongful eviction.
¶17 Silverman's wrongful eviction argument fails because there was no waiver of the defaults. Silverman takes language from Palmer out of context. Palmer was essentially an election of remedies case, and the court was focused on whether a landlord could both accept rent during the pendency of legal proceedings and assert at trial that the lease was not in force. See id. at 33-35. Palmer does not apply here because the court in Palmer was not addressing the effect of an express anti-waiver provision like the one in Silverman's lease. Silverman cites no authority that prohibits such provisions. The most that can be said is that Palmer might be relevant here if Silverman's lease did not contain an anti-waiver provision.

Whether Silverman Was Entitled to Damages for Double the Value of Personal Property He Left at the Apartment Because 121 Langdon Failed to Comply with Applicable Law in Storing the Property
¶18 Silverman next argues that he is entitled to double the value of certain personal property that he left behind at the apartment because 121 Langdon seized and held the property. His argument is based on the interaction of three statutory and administrative provisions: WIS. STAT. § 704.05(5), which imposes certain obligations on landlords when tenants remove from premises and leave personal property behind; WIS. ADMIN. CODE § ATCP 134.09(4), which prohibits landlords from seizing or holding a tenant's personal property except as authorized in § 704.05(5); and WIS. STAT. § 100.20(5), which provides that "[a]ny person suffering pecuniary loss because of a violation by any other person of any order issued under this section may sue for damages ... and shall recover twice the amount of such pecuniary loss ...."
¶19 Because 121 Langdon does not develop its response to Silverman's argument, we will assume that 121 Langdon violated both WIS. STAT. § 704.05(5) and WIS. ADMIN. CODE § ATCP 134.09(4). For the same reason, we will also assume for purposes of this case that any regulation promulgated in WIS. ADMIN. CODE ch. ATCP 134 constitutes an "order issued under" WIS. STAT. § 100.20.
¶20 We nonetheless conclude that inaction on Silverman's part waived his claim that 121 Langdon's violations caused him damages. The circuit court's findings of fact show that Silverman never sought to retrieve his personal property, even after he knew that 121 Langdon had not disposed of that property and was storing it. Silverman does not attack the circuit court's fact finding, but instead argues more facts. However, Silverman's factual arguments, including the alleged inconvenience of retrieving his property, are not properly directed at this court.

Whether 121 Langdon Made Reasonable Efforts to Mitigate
¶21 Because the landlord may have waited until March 28, 2001, to advertise Silverman's apartment, Silverman asserts that the circuit court erred in determining that 121 Langdon's efforts to mitigate were reasonable. According to Silverman, 121 Langdon should not be able to recover rent for the period between February 7, the date of the five-day default notice, and March 27. We reject Silverman's argument because we agree with the circuit court's reasonableness determination and conclude that Silverman has failed to meet his burden of showing that 121 Langdon's efforts were not reasonable.
¶22 Under WIS. STAT. § 704.29(1) and (2), a landlord can recover rent and damages except for amounts that the landlord could mitigate through "reasonable efforts." Section 704.29(3) explains that, although a landlord must "allege and prove that the landlord has made efforts to comply with this section," it is the tenant who "has the burden of proving that the efforts of the landlord were not reasonable."
¶23 At the de novo trial, 121 Langdon produced evidence of its efforts to mitigate. One of 121 Langdon's owners, Harold Langhammer, testified that, although Silverman had announced his intention to vacate, Langhammer did not actually know whether the apartment was vacant as of February 13, the date that the five-day default notice required the tenants to vacate. Langhammer explained that, in his experience, people do not voluntarily vacate upon a five-day notice but instead normally wait until the sheriff brings the notice after the formal eviction. The judgment of eviction in this case was entered on March 20, 2001. Langhammer also testified that the three sets of keys were never returned and that the return of keys usually tells him whether tenants have vacated. Based on Langhammer's testimony and the date of the eviction judgment, we agree with the circuit court's conclusion that 121 Langdon's efforts to mitigate were reasonable, particularly given that Silverman had the burden of proving otherwise.
By the Court.  Judgment affirmed.
NOTES
[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2003-04). All references to the Wisconsin Statutes are to the 2003-04 version unless otherwise noted.
[2] After 121 Langdon obtained the judgment of eviction and an initial money judgment, Silverman successfully moved to reopen the case. The circuit court entered a second money judgment after proceedings before a court commissioner and a de novo trial in the circuit court. Silverman's appeal is from the second judgment.
[3] 121 Langdon asserts that a number of Silverman's defenses in the circuit court were waived because Silverman filed amended pleadings without permission and because, as 121 Langdon puts it, the circuit court "properly ruled that these pleadings were not timely and the new issues raised in them were not properly before the court." 121 Langdon provides no record cites in its brief, so it is not immediately clear what ruling of the circuit court 121 Langdon is referring to. In any event, the circuit court appears to have considered and decided most if not all of the issues that Silverman raises on appeal. Accordingly, we address Silverman's arguments on appeal without regard to when he first raised corresponding defenses or claims in the circuit court.

We further observe that 121 Langdon's brief does not, in fact, develop any of its arguments. Its brief includes one legal citation, no record citations, and approximately four double-spaced pages of argument. These arguments essentially amount to the following unsupported bald assertion: "The circuit court was right."
We recognize the frustration involved in litigating civil disputes involving relatively modest sums of money, particularly when a represented party faces a prolific pro se party as an adversary. But it is not this court's role to bear the brunt of those frustrations, and it is certainly not this court's role to independently develop a party's arguments for it from scratch. See Gardner v. Gardner, 190 Wis. 2d 216, 239-40 n.3, 527 N.W.2d 701 (Ct. App. 1994); see also WIS. STAT. RULE 809.19. Silverman has raised non-frivolous issues in this litigation, and he has even prevailed on some of them. We strongly caution 121 Langdon against submitting the sort of brief it has submitted in this case. See WIS. STAT. RULE 809.83(2) (setting forth penalties for noncompliance with rules of appellate procedure). 121 Langdon has prevailed on appeal, but we could have declined to develop its arguments for it and reversed the circuit court.
121 Langdon, in its brief, also raises what it characterizes as "issues in addition to those listed" in Silverman's brief. We do not address these issues independent of Silverman's arguments because, as already suggested, 121 Langdon's arguments are wholly undeveloped. Moreover, at least one of these additional issues would have been more properly raised on a cross-appeal, which 121 Langdon did not file.
[4] The provisions of WIS. ADMIN. CODE ch. ATCP 134 pertinent to this appeal have remained the same at all times relevant to this case.
[5] Silverman also cites case law prior to Baierl v. McTaggart, 2001 WI 107, 245 Wis. 2d 632, 629 N.W.2d 277, which seems to suggest that a violation of an administrative regulation may automatically result in an invalid contract. See Huff & Morse, Inc. v. Riordon, 118 Wis. 2d 1, 10, 345 N.W.2d 504 (Ct. App. 1984). However, we read the supreme court's decision in Baierl to clarify that this is not the law. See Baierl, 245 Wis. 2d 632, ¶¶16-17, 19.