COURT OF APPEALS
DECISION
DATED AND FILED

September 4, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2018AP1211**

Cir. Ct. No. 2016CV97

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

RICHARD A. BIRNSCHEIN D/B/A PROGRESSIVE CARPENTRY,

   PLAINTIFF-RESPONDENT,

 V.

DAVID SANDLUND AND PATRICIA SANDLUND,

   DEFENDANTS-APPELLANTS.

APPEAL from a judgment of the circuit court for Door County: D. T. EHLERS, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. David and Patricia Sandlund (the Sandlunds) appeal from a money judgment in favor of general contractor Richard Birnschein

d/b/a Progressive Carpentry regarding a construction project at the Sandlunds'
Door County home. We affirm.

## BACKGROUND

¶2    The construction project at issue involved installing a new roof and
new windows. In July 2015, Birnschein's son measured windows at the home and
the windows were ordered in August. On August 14, Birnschein purchased
shingles on authorization from the Sandlunds. On September 11, Birnschein
emailed the Sandlunds and informed them that the shingles had arrived. The
Sandlunds replied to the email as follows:

> Will call you later today[;] the kids think I am nuts to spend
> that much on the house at this stage of our lives … The
> kids are now looking for someplace for us to move to warm
> and easier living … I must admit this whole process has
> gotten me to thinking about just selling and moving on[.] I
> love it up here but maybe it is time for us to move on.
> Naturally I am not going to let you get stuck with any
> material costs that you have incurred but no decision has
> been made yet[.] [W]e may not even get a permit which
> will end the whole thing anyway.

¶3    The parties met in late September to attempt to salvage the project,
but they were unsuccessful. Birnschein subsequently prepared an invoice for the
materials and labor provided. The Sandlunds disputed multiple charges, but the
only disputed issue on appeal involves the charge for the windows which the
Sandlunds claim they did not authorize. Birnschein commenced a breach of
contract action to collect the amount allegedly due. The Sandlunds answered,
denying they owed any sums for the windows and asserting affirmative defenses

2

based upon the statute of frauds, pursuant to WIS. STAT. § 402.201(1) (2017-18),[1] and claimed violations of the Wisconsin Home Improvement Practices Act under WIS. ADMIN. CODE § ATCP 110.

¶4    After a bench trial, the circuit court issued a written decision granting judgment to Birnschein.  The court found the parties had an oral contract and that the Sandlunds had authorized Birnschein's purchase of the windows.  The court concluded the statute of frauds did not apply because the contract was for home improvement services rather than a contract for the sale of goods.  In addition, the court concluded the argument regarding WIS. ADMIN. CODE § ATCP 110 was without merit.  The Sandlunds now appeal.

### DISCUSSION

¶5    The circuit court finds the ultimate facts in actions tried to the court, and those facts shall not be set aside unless clearly erroneous.  WIS. STAT. § 805.17(2).  Witness credibility is also the province of the circuit court.  *See Johnson v. Merta*, 95 Wis. 2d 141, 151-52, 289 N.W.2d 813 (1980).  Statutory interpretation is a question of law we review de novo.  *Hutson v. Wisconsin Pers. Comm'n*, 2003 WI 97, ¶31, 263 Wis. 2d 612, 665 N.W.2d 212.  Determining the existence and nature of a contract also presents a question of law.  *1325 N. Van Buren, LLC v. T-3 Group, Ltd.*, 2006 WI 94, ¶29, 293 Wis. 2d 410, 716 N.W.2d 822.

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶6      The claims in the circuit court for Birnschein's preparatory costs and the shingles he ordered on behalf of the Sandlunds were undisputed.  What the Sandlunds disputed was whether they authorized Birnschein to order the windows.[2]  At trial, David Sandlund specifically denied ever having authorized Birnschein to order the windows.  However, the court discredited David's testimony.  It is not our function to review questions as to the credibility of witnesses where more than one reasonable inference can be drawn.  *Johnson*, 95 Wis. 2d at 151.  The court found the evidence "supports no other conclusion than the [Sandlunds] knew [Birnschein] was ordering these Anderson windows on their behalf and that they authorized [Birnschein] to do so."  The court's findings are not clearly erroneous.  *See* WIS. STAT. § 805.17(2).

¶7      It was undisputed that after having undertaken other projects in the winter of 2014, the Sandlunds contemplated undertaking additional improvement projects at their home.  Between the winter of 2014 and the autumn of 2015, the parties negotiated the extent of those additional improvement projects.  The circuit court found that by at least May 2015 the Sandlunds agreed that Birnschein would replace the windows and roof on their home.

¶8      The circuit court noted the Sandlunds and Birnschein met at a building supply company in the summer of 2015 to discuss the style of windows Birnschein would be installing.  David Sandlund, in his testimony at trial, did not dispute that this meeting took place.  Birnschein's son testified that he met his father at the Sandlunds' home on July 22 where David was also present.

---

[2] In the circuit court, the Sandlunds also disputed a 10% markup on materials and services.  However, the circuit court disallowed the markup and it is not an issue on appeal.

4

Birnschein testified unequivocally that David at that meeting gave him the go-ahead to order the windows. Birnschein's son testified David knew he was going to the building supply company to order the windows after he remeasured the patio doors and back bedroom windows.

¶9    The circuit court also found that David Sandlund's September 11 email stating "I am not going to let you get stuck with any material costs that you have incurred" was intended to include the windows and the shingles. The court noted in this regard that David in that email "[did] not state that he was not going to let [Birnschein] get stuck with the shingle cost but 'any material costs that [Birnschein had] incurred.'" The court ultimately found:

> This case is a prime example of buyer's remorse by [the Sandlunds]. They intended to have [Birnschein] do additional remodeling work on their home and authorized him to order the windows and shingles. They knew at a minimum that work had to be done. What, if any, additional work would be done was up in the air for months. When [the Sandlunds] procrastinated long enough into September and [Birnschein] then told them he couldn't get to their project until the spring of 2016, [the Sandlunds] got angry and then had someone else do the work.

¶10    The Sandlunds argue "Mr. Birnschein's complaint should be dismissed because his claim for money violates the statute of frauds under sec. 402.201, Wis. Stats." The circuit court found the parties' oral contract was for home improvement services and therefore it was not subject to WIS. STAT. § 402.201, which requires a writing for the sale of goods in excess of $500 sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought. The Sandlunds challenge whether the contract was for services rather than goods.

¶11 The parties agree that courts apply the predominant purpose test in determining whether a contract is one for the sale of goods or services. When considering the predominant purpose of a contract, the totality of the circumstances surrounding a transaction is to be examined. Ultimately, the test is aimed at determining whether the parties' "predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved … or is a transaction of sale, with labor incidentally involved." *Van Sistine v. Tollard*, 95 Wis. 2d 678, 684, 291 N.W.2d 636 (Ct. App. 1980). Specific factors used by courts include the language of the contract, the nature of the business of the supplier, the intrinsic worth of the materials, the circumstances of the parties, and the primary objective they hope to achieve. *Linden v. Cascade Stone Co., Inc.*, 2005 WI 113, ¶¶20-21, 283 Wis. 2d 606, 699 N.W.2d 189. Applying these factors to the present case, we agree with the circuit court that the predominant purpose of the contract was for services, rather than for goods, and that the transaction does not violate the statute of frauds under WIS. STAT. § 402.201.

¶12 The circuit court found the Sandlunds intended to have Birnschein do additional remodeling work on their home and authorized Birnschein to install a new roof and new windows. The parties did not merely agree that Birnschein would purchase the materials. Birnschein was not in the business of selling shingles and windows. Rather, he was in the business of installing them, providing a service rather than selling goods. Birnschein's customers chose the products—as the Sandlunds did in this case—the goods were essentially selected independently by the Sandlunds.

¶13 Moreover, trial exhibit 6—the estimate for labor and materials for the remodeling work—further supports the circuit court's determination the parties

contracted for Birnschein to provide services rather than goods, as it shows the materials purchased were worth less than half of the estimated contract value. In their reply brief, the Sandlunds contend "Birnschein again ignores the fact that there was no contract for the work described in Exhibit 6 and that Exhibit 6 was never given to the Sandlunds." However, the Sandlunds concede in their principal brief that the court "decided that a contract existed," and they do not develop an argument that the court erred in doing so. The court discredited David Sandlund's testimony denying that he authorized Birnschein to order the windows. To the contrary, the court specifically found the Sandlunds knew Birnschein "was ordering these Anderson windows on their behalf and that they authorized [Birnschein] to do so." We also note the Sandlunds do not argue the estimate is inaccurate. Further, the court found that David's email providing "[n]aturally I am not going to let you get stuck with any material costs that you have incurred" was "intended to include the windows in addition to the shingles."

¶14 The Sandlunds' reliance on *Linden* and *1325 N. Van Buren* is misplaced. First, both *Linden* and *1325 N. Van Buren* were construction cases where the main issue involved the economic loss doctrine, which is a judicially created doctrine that bars recovery in tort for a product that fails in its intended use but injures only itself. *See Linden*, 283 Wis. 2d 606, ¶¶6-7. Economic damages recoverable in a breach of contract action do not include losses due to personal injury or damage to other property. *Id.*, ¶6. The present case does not involve the economic loss doctrine, the policy of which is to avoid tort liability in contract cases, as Birnschein makes no claim for personal injury or damage to property. The dispute here is purely contractual in nature.

¶15 In addition, in analyzing the predominant purpose of the contract in *Linden*, the supreme court determined the Lindens contracted for a product—a

7

new house—rather than services. *Id.*, ¶25. The court stated "the primary reason the Lindens entered into the contract was to have a house custom built for them." *Id.* The court also stated:

> We conclude that when one contracts with a general contractor to build a house and the general contractor subcontracts with others to provide various services, the general contract controls whether the economic loss doctrine is available as a defense. … In the present case, we conclude that the general contract between the Lindens and Groveland was primarily for a product.

*Id.*, ¶32.

¶16 Similarly, the contract in *1325 N. Van Buren* involved the renovation of an industrial warehouse which entailed gutting it entirely and turning it into forty-two residential condominium units. *1325 N. Van Buren*, 293 Wis. 2d 410, ¶46. The court concluded the predominant purpose of the contract was for the sale of goods, specifically "to provide a completed condominium complex rather than to provide construction management services." *Id.*, ¶45.

¶17 The present case is more analogous to *Van Sistine*. There, the dispute concerned two contracts for improvements to the defendant's house—to install windows, install stucco siding, reposition appliances and perform finishing. *Van Sistine*, 95 Wis. 2d at 680. This court noted the contractor was described as a "siding contractor" in the contracts and on the bills submitted, and the tasks to be undertaken were described in the second contract as services such as "install," "reposition," "move," and "finishing." The contract did not speak in terms of a sale. *Id.* at 685. This court also considered that more than half of the cost of the project was for labor, with a lesser amount expended for materials. *Id.* Under the totality of the circumstances, this court concluded the contract was primarily for services, with an incidental sale of materials. *Id.*

¶18     The Sandlunds also reiterate their argument below that the Wisconsin Home Improvement Practices Act under WIS. ADMIN. CODE § ATCP 110 required the contract to be in writing because Birnschein required progress payments before the work was completed, and that absent a written contract the oral agreement is void.  However, § ATCP 110 does not provide that a violation of its requirements necessarily voids the contract.  "[I]t is a 'grave error' to assert that all contracts in violation of a statute are unenforceable."  **Baierl v. McTaggart**, 2001 WI 107, ¶19, 245 Wis. 2d 632, 629 N.W.2d 277.  And, regardless of whether a person who has suffered loss because of a violation may sue directly for damages or otherwise on equitable grounds, the Sandlunds have not brought a claim for damages and neither have they alleged they suffered any pecuniary loss because of an alleged violation of § ATCP 110.  Moreover, performance did not progress to the point where Birnschein sent them any interim bills.  Birnschein's first interim statement, as shown by trial exhibit 10, was not sent until after the Sandlunds had already repudiated the remodeling work.  Thus, the court properly concluded any violation of § ATCP 110 by Birnschein did not void the parties' contract.

¶19     The Sandlunds contend that a written contract prevents confusion and disputes.  That may be, but the circuit court was not confused as to whether the parties had a contract or whether the Sandlunds authorized the windows.  Quite simply, the Sandlunds got exactly what they bargained for—the windows that the court found they authorized Birnschein to order on their behalf.

¶20     Finally, the Sandlunds claim the circuit court erred by failing to void the oral contract because Birnschein furnished material constituting a home improvement under WIS. ADMIN. CODE § ATCP 110.01(4) prior to obtaining all required permits.  Section ATCP 110.03(1) provides that except as provided under

subdivision (4), "no seller may start work under a home improvement contract until all required state and local permits have been issued." However, the Sandlunds provide no citation to legal authority supporting the conclusion that someone requires a permit to merely purchase windows for installation or to do site preparation planning. And, to the extent the windows were purchased before a building permit to install was issued, the court found the Sandlunds knew and approved that action.

¶21     Moreover, the windows and shingles had been ordered prior to David Sandlund's September 11, 2015 email stating, "I am not going to let you get stuck with any material costs that you have incurred." The Sandlunds will not now, because of what the circuit court found to be "a prime example of buyer's remorse by the Defendants," be heard to argue the contract for window purchase and installation is void because the windows were purchased before a permit was issued. The Sandlunds approved the purchase knowing it was made before permitting took place and subsequently promised to pay for any material costs Birnschein may have incurred.

          *By the Court.*—Judgment affirmed.

          This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.